HOWARD DUSTLESS DUSTER CO. v. CARLETON.

(Circuit Court, D. Connecticut. March 9, 1911.)

No. 1,342.

1. TRADE-MARKS AND TRADE-NAMES (§ 67*)—UNFAIR COMPETITION.

Where complainant by making and selling his dustless duster in the same distinctive manner for a number of years had, at great expense, built up a valuable trade therein, his rights were entitled to protection against defendant, his prior sales manager, who, after leaving complainant's employ, started to make and sell similar dusters.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 78; Dec. Dig. § 67.*]

---

2. **TRADE-MARKS AND TRADE-NAMES (§ 97\*)—UNLAWFUL COMPETITION—INJUNCTION.**

In a suit to restrain unlawful competition, complainant, before any showing of actual damages, was not entitled to an injunction restraining defendant from putting out a package and circular similar to complainant's.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names; Cent. Dig. §§ 110, 111; Dec. Dig. § 97.\*]

3. **TRADE-MARKS AND TRADE-NAMES (§ 97\*)—UNLAWFUL COMPETITION—COLOR OF ARTICLE—INJUNCTION.**

Where complainant, a pioneer in the business, manufactured and sold a certain alleged dustless dust cloth, and for a long period of time had dyed such cloths black to give them a distinctive appearance, and by advertising had built up a valuable trade, complainant was entitled to an injunction restraining defendant from manufacturing and putting out in competition with complainant's cloth another similar cloth dyed black.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. § 97.\*

Unfair competition in use of trade-mark, see note to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Suit by the Howard Dustless Duster Company against L. Clinton Carleton. On demurrer to bill. Overruled.

Order revoked and stipulation set aside (187 Fed. ——).

Oliver Mitchell, for plaintiff.

Joseph P. Tuttle, for defendant.

PLATT, District Judge. Under the long-established rule the demurrer admits all the facts set forth in the bill. It does not, of course, admit any conclusions of law drawn from those facts. It is also the rule that the facts must be accepted by the defendant as bearing against him with the utmost force, but this latter thought is unimportant, because I deem it my duty to treat the facts fairly and decide whether in the light of such facts equity ought to interpose, and, if so, to what extent.

Some of the pertinent facts thus reached are: The plaintiff in 1905 was the pioneer in making and marketing an article known as a "dustless duster." It is made from white cheese cloth under a secret process, which gives the cloth dust retaining characteristics. From its introduction to the public until this suit was brought the plaintiff has employed the same methods in making and marketing the article, the important parts thereof being hereinbelow set forth. It went out of its way, and to extra expense, to dye the cheese cloth black, for the sole purpose of giving it a distinctive appearance. It puts this black dust cloth in a distinctive package, inclosing therewith a distinctive circular. It has spent much money in advertising its distinctive dust-cloth, package, and circular, and has sold about 2,000,000 of its dust cloths under this method. Such extensive sale has taught the public that the distinctive black color of the cloth, and the distinctive circular and color scheme of the inclosing package, point to the plaintiff as the manufacturer of such dust cloths, which public recognition is an asset of value belonging to the plaintiff.

The defendant has been sales agent for the plaintiff in Connecticut, and in that way became familiar with plaintiff's business, customers,

and methods. Since severing his connection with the plaintiff, he has begun to make dusters which are used for the same purposes as those first introduced upon the market by the plaintiff. He makes them of white cheese cloth, and takes the trouble to dye the cloth black. No other competitors of the plaintiff dye their cloth black. He puts the dust cloths in packages which are of substantially the same size and coloring as those used by the plaintiff. He places in the packages with the dust cloths a circular which in style, appearance, and reading matter is suggestively similar to that used by the plaintiff. He places on his package, in an ink somewhat less red, having a perhaps slightly brownish tinge, the words, "Standard," "25 Cents," "Sanitary," "Antiseptic," in places upon the package not so very far from the places always used by the plaintiff. He carefully avoids the use of the plaintiff's trade-mark which is the conspicuous feature of the plaintiff's package, and gives his own address, L. C. Carleton, 26 Linsley Avenue, Meriden, Conn., a plain and conspicuous position on his package. He calls his article, in brownish red letters, a "Dust-Absorbing Dust Cloth." The plaintiff's trade-mark is an elongated red diamond, containing in white letters the words, "Dustless-Duster." The above seem to be the important facts.

It is obvious that the plaintiff by making and selling its dustless duster in one and the same distinctive manner for a number of years has at great expense built up a valuable trade therein which is entitled to protection. If the defendant has done anything in the making and selling of his dust cloth, which, if continued, will necessarily lead to confusion in and invasion of that trade, he should be told to stop doing so at once. He was formerly in confidential relations with the plaintiff, and for that reason cannot expect any relaxation of the severest principles of that equity which must govern the court in its decision. He may have his pound of flesh, but he must satisfy the court that in taking it he has not cut an iota beyond the line. I do not think that at this stage of his enterprise, before any showing of actual damage is made, I ought to stop the use of his package or circular. It might be wiser for him to recast his circular and the use of objectionable words on the package, but upon that subject I shall refrain from giving definite advice.

As to the other prayer for relief relating to the dyeing of his dust cloth black, I am of the opinion that he ought to stop that. At the argument it will be remembered that I asked why he made it black, and his counsel replied that it was probably because the purchasers preferred it black. If this is so, the plaintiff was fortunate in selecting at the start the black color as one which pointed directly to him as maker. It is certain that the article performs no better service when dyed black. In its use as a dust collector the black color might be a disadvantage from a practical standpoint. The black color is in no sense necessary, and its use must, in my opinion, lead to confusion, uncertainty, and loss of trade which by right belongs to the plaintiff. The first prayer for relief ought to be granted.

This memorandum has been prepared because it was understood at the argument that the defendant was willing to accept whatever views

the court might have in the matter and would gladly conform his business thereto.

The court will delay positive action in this matter until it shall be further advised by counsel as to the result of this opinion.

March 15, 1911.

Counsel for both parties desiring this opinion to be treated as a final disposition of the case, a decree may be entered granting the relief asked for in the first clause.