HOWARD DUSTLESS DUSTER CO. v. CARLETON.

(Circuit Court, D. Connecticut. June 3, 1911.)

No. 1,342.

TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—PREVIOUS.
USE—COLOR OF ARTICLE.

Where complainant manufactured and sold an alleged dustless dust-
cloth of black color, but he was not a pioneer in the business, he was not
entitled to restrain defendant from manufacturing, and putting out in
competition, a similar cloth made from black material purchased from
another.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec.
Dig. § 70.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165;
Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Action by the Howard Dustless Duster Company against
L. Clinton Carleton. On motion to set aside a stipulation for judg-
ment. Application granted.

For former opinion, see 185 Fed. 999.

Mitchell, Chadwick & Kent, for complainant.
Bill & Tuttle, for defendant.

PLATT, District Judge. This case was heard upon demurrer last.
March. The decision will be found in 185 Fed. 999. There was no
occasion for so elaborate a presentation as will be found there, except
for the fact that counsel for defendant had signified his willingness·
to abide the result of my investigation. I therefore stated at some
length, and with some care, the course which I should think it right
to pursue if the matter had then been before the court on final hearing.
The opinion was filed on March 9th. On March 15th counsel for·
both parties appeared before me in person and stipulated that the opin-
ion of the 9th might be treated as a final disposition of the case, and,
acquiescing therein, I ordered a decree to issue granting the relief
asked for in the first clause of the bill. Up to the present time no de-
cree has been issued, and now counsel for defendant asks to have the
stipulation set aside, because he has since learned that a valid defense
exists of which he was ignorant at the time of entering into the stip-
ulation.

This matter cuts deeper than can be remedied by a resort to tech-
nical rules of practice. What I did in March has been used to influ-
ence persons who have no interest in the litigation between these par-
ties. What I shall do now must not be affected by the bickerings of
the parties hereto, or by an attempt to saddle the blame upon this one
or upon that one. Let the unvarnished tale explain itself.

The opinion of March 9th was based upon my conception of the
situation between the parties, as evidenced by the facts set up in the
complaint, which were admitted to be true by the demurrer. I under-
stood from the bill that the plaintiff was the first party who dyed white

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

cheesecloth black, at unnecessary trouble and expense to itself, for the sole purpose of giving the duster a distinctive appearance which would point to it as maker, and that no competitors had dyed their cheesecloth black until this defendant invaded the market. With those facts, and especially the latter one, absent from the case, the opinion of March 9th would not have been promulgated, and the bill would have been dismissed on demurrer, without comment.

It would seem that my position in the matter ought to have been easily understood from the language used in the opinion. I referred therein to the fact that defendant took the trouble to dye his cloth black, and that *"no other competitors of the plaintiff"* dyed their cloth black. I am now informed that at least one competitor, and that a strong one, has for many years made a duster which it dyed black.

The only issue between the plaintiff and that competitor, as I understand it, would be as to which party first adopted that practice. It is plain to me, however, that the exact date of beginning is immaterial. If other parties began to dye their white cheesecloth black before the plaintiff had continued that practice a sufficient length of time to have made its black cloth a distinctive sign, pointing directly and exclusively to its factory, the entire structure upon which my final conclusion was erected crumbles and falls to the ground.

I have re-examined the situation which confronted me when I wrote the opinion of March 9th. Paragraph XI of the bill is as follows:

"Your orator shows that the dyeing black by the defendant of his dustcloth is unnecessary for any honest purpose, since other competing manufacturers of dustcloths have severally adopted distinctive colors and combinations of colors to distinguish each his own article. Such colors, for example, as brown, pink, and blue are in use by manufacturers who have come into the market since your orator began business."

Point 5 of the demurrer is as follows:

"Because it appears from the complaint that the article manufactured and sold by the complainant is one in which there is a large amount of competition, and in which several persons, other than the parties to this suit, are engaged in the manufacture and sale of, and the complainant has had no such exclusive sale of said article as to entitle it to the relief prayed for."

Plaintiff's counsel presented at the hearing on demurrer a printed brief in which he commented on point 5 in the following language:

"It nowhere appears in the bill that 'there is a large amount of competition.' It does appear by the bill that other manufacturers make dusters, and that these competitors color them distinctively; for example, red, pink, and blue. (Bill, par. XI.)"

Later in the brief, in stating the facts as bearing upon defendant's wrong, he condenses paragraph XI of the bill in the following language:

"The dyeing black of his dustcloth by the defendant is *unnecessary* for any honest purpose. Other competing manufacturers have severally adopted distinctive colors and combinations of colors to distinguish each his article. For example, brown, pink, and blue are in use by other manufacturers."

It now appears that defendant did not dye his white cheesecloth black at all, but bought his black cloth from a competitor.

It does not improve the situation for plaintiff to say that the defendant ought to have told his counsel, and his counsel ought to have told the court. The defendant would naturally be so agitated by the strenuous attack upon his petty business that he ought to be excused for not taking a comprehensive view of the situation.

As for the plaintiff, the lenient view of the matter is that it did not realize that it fundamentally affected its rights against this defendant to bring into strong relief those competitors who used other colors than black, and to refrain with exceeding care from mentioning those who did use the black.

It is unfortunate that the opinion of March 9th was ever written. I have tried to make it clear that it was founded on a misconception of some of the ultimate material facts. The stipulation of counsel is set aside, because it produced a false situation. The order of March 15th, having been based thereon, is revoked, and the case may proceed in the usual way. The revocation of the order of March 15th is intended to render, and does render, nugatory and unavailing all statements of fact and conclusions of law to be found in the opinion of March 9th, which grew out of the misconception which I have explained above.