HOWARD DUSTLESS DUSTER CO. v. CARLETON et al.

(District Court, D. Connecticut.   January 13, 1915.)

No. 1342.

1. TRADE-MARKS AND TRADE-NAMES ☞89—UNLAWFUL COMPETITION—SALE OF MATERIAL.

Where defendant manufacturing company made and sold to C. dust cloths, which the latter sold so that they could be and actually were used by C. to mislead the public to believe that they were cloths of peculiar quality, manufactured and sold by complainant, such manufacturing company was a joint tort-feasor with C., and guilty of contributory infringement of complainant's rights.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 99; Dec. Dig. ☞89.]

2. TRADE-MARKS AND TRADE-NAMES ☞67—UNLAWFUL COMPETITION.

Complainant, in order to protect his rights to the use of particular dress of an article sold by him, need not have an exclusive right in any one element of the dress or packing of the article, size, shape, coloring, lettering, wording, or symbol, so long as the ensemble has come to be a public guaranty of origin and quality.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 78; Dec. Dig. ☞67.]

3. TRADE-MARKS AND TRADE-NAMES ☞97—UNLAWFUL COMPETITION—INJUNCTION.

Where there is added to the defendant's dress of a competing article an inscription which both in its pictorial aspect and its meaning is calculated to confuse, if not to deceive, the public to believe that the article is that manufactured by complainant, he is entitled to an injunction; the sole question being, does the adoption of the collocated features of complainant's style of dress disclose a differentiation from that previously adopted, and by which the public has come to recognize complainant's product? the test being whether ordinary purchasers would be misled by the similarity between the two designs.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. ☞97.]

4. TRADE-MARKS AND TRADE-NAMES ☞84—UNLAWFUL COMPETITION—GOOD FAITH.

In a suit for unlawful competition, the fact that defendants may have acted in good faith and believed that they were not infringing plaintiff's rights is immaterial.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 93, 97; Dec. Dig. ☞84.]

5. TRADE-MARKS AND TRADE-NAMES ☞84—UNLAWFUL COMPETITION—DEFENSES—DAMAGES.

The fact that careful buyers may not have been deceived by defendants' alleged unlawful competition is no defense, but only goes to minimize the loss.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 93, 97; Dec. Dig. ☞84.]

In Equity.   Bill by the Howard Dustless Duster Company against L. Clinton Carleton and others.   Decree for complainant.
See, also, 187 Fed. 472.

Oliver Mitchell, of Boston, Mass., for plaintiff.
Willard B. Luther, of Boston, Mass., for defendants.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
219 F.—58

THOMAS, District Judge. This is a bill in equity by the plaintiff for alleged unfair competition by the defendants. In the bill as originally filed, L. Clinton Carleton was sole defendant. The substantial allegations of the bill are that the plaintiff was engaged in the manufacture and sale of a dust cloth put out in a distinctive package with a distinctive circular, and that the plaintiff was a pioneer in making and so marketing such dust cloth; that this dust cloth was made of a specially woven cheesecloth under a secret process, which imparted to it special dust-retaining characteristics, and the material for which was, before being submitted to the secret process to prepare it for a dust cloth, dyed black, and that the dyeing process was adopted by the plaintiff as a means of giving it a distinctive appearance; also that this dyeing has no other purpose than to give the article a distinctive appearance, since this color functionally is somewhat disadvantageous, in that the dust collected shows more plainly upon the black-colored cloth than it would upon cloth uncolored.

The bill of complaint also alleges that the plaintiff has expended a large amount of money in building up and developing the trade connected with the sale and manufacture of these articles, and has put this dust cloth upon the market in packages of a certain size and color, which was the scheme for the outer wrapper of the duster as marketed, and that the defendant Carleton, who was a former agent of the plaintiff, was putting out an imitation thereof in an imitative package and with a circular similar to the plaintiff's, which package was adapted to be used, and was used, by dealers for the purpose of substitution as and for plaintiff's dust cloth.

The bill of complaint then prayed for an injunction that the defendant be restrained:

"1. From selling or offering for sale dust cloths so colored as to present substantially the same visual appearance as complainant's dust cloth, and particularly from selling or offering for sale dust cloths dyed black, in imitation of complainant's dust cloth.

"2. From selling or offering for sale dust cloths so packed or dressed as to be likely to be confused with complainant's package."

The bill of complaint has annexed to it a specimen of the plaintiff's package and of the defendant's package, marked, respectively, "Complainant's Exhibit A" and "Complainant's Exhibit B."

There was a demurrer to this bill by the defendant Carleton, upon which the court reached the conclusion that the first prayer for relief should be granted, and overruled the demurrer. (C. C.) 185 Fed. 999.

Six days subsequent to the filing of the opinion overruling the demurrer, the plaintiff and defendant Carleton entered into a stipulation that the overruling of the demurrer should be treated as a final disposition of the cause, and that final judgment might be entered accordingly. Subsequently a motion was made by Carleton to set aside this stipulation, on the ground that the defendant did not dye his dust cloth black, but purchased it in the open market from a dealer. This motion was granted, for the reason that it was made to appear in the moving papers that the defendant did not dye his

white cheesecloth at all, but bought the cloth dyed from an alleged competitor, the Tate Manufacturing Company, and that this practice of dyeing cheesecloth black was not original with the plaintiff, but had been in use by others than the plaintiff for many years. (C. C.) 187 Fed. 472.

Thereupon, and subsequent to the decision setting aside the stipulation, the plaintiff advertised in its trade circular that it had obtained an injunction against selling or offering for sale dust cloths dyed black.

Thereafter the defendant the Tate Manufacturing Company, which had, with the permission of the court, intervened as a codefendant subsequent to the filing of the second opinion, filed a petition of contempt against the plaintiff and its two managing officers, alleging that this trade circular advertisement did not accurately state the decision as it was finally made, and was therefore in contempt. No action has ever been taken on this petition. Subsequently the court issued ex parte, without any opinion, a temporary restraining order against plaintiff, restraining a violation of the second prayer for relief in this petition.

Later on the plaintiff prepared and published a new circular, in which the page on which it appeared was changed as a whole, although the advertisement itself remained unchanged.

Separate answers were filed by the defendants, which are substantially identical, both of which deny the material averments of the complaint.

[1] In view of the history of the case and of the evidence presented on final hearing, the question of coloring, per se, may be and is eliminated as an issue, and the only question, irrespective of the question of contempt, on the above pleadings and proofs, is whether the defendants have made, sold, or offered for sale dust cloths so packed or dressed as to be likely to be confused with plaintiff's package. If the defendant the Tate Manufacturing Company has made and sold its dust cloths to Carleton, which the latter sold, so that they may or have been actually used by Carleton so as to mislead the public, it became a joint tort-feasor with Carleton, and is guilty of contributory infringement of plaintiff's rights; the means of deceiving purchasers giving a right of action. Hennessy v. Herrmann (C. C.) 89 Fed. 669; Hildreth v. Sparks Mfg. Co. (C. C.) 99 Fed. 484; Reading Stove Works v. S. M. Howes Co., 201 Mass. 437, 87 N. E. 751, 21 L. R. A. (N. S.) 979. The principle governing the infringement of combination patents, that to make or sell a single element with the intent that it shall be united to the other elements is an infringement, is applicable. Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 297, 25 C. C. A. 267, 35 L. R. A. 728; Cortelyou et al. v. Lowe et al., 111 Fed. 1005, 49 C. C. A. 671. Here the existence of such intention is a clear inference from the testimony.

[2] And it is immaterial whether the plaintiff has no exclusive right in any one element of the dress or packing of the article, size, shape, coloring, lettering, wording, or symbol, so long as the ensem-

ble has come to be a public guarantee of origin and quality. If it has, and the proofs show that it has, the plaintiff is entitled to protection against the unfair competition of a competitor. Enoch Morgan's Sons Co. v. Ward, 152 Fed. 690, 81 C. C. A. 616, 12 L. R. A. (N. S.) 729.

As was said by Mr. Justice Holmes, then of the Supreme Judicial Court of Massachusetts, in New England Awl Co. v. Marlborough Awl Co., 168 Mass. 154, 156, 46 N. E. 386, 387 (60 Am. St. Rep. 377):

"Of course, a person cannot claim the monopoly of a color in connection with a particular line of trade, and very likely not in connection with the labels of a certain kind of goods generally. But the most universal element may be appropriated as the specific mark of a plaintiff's goods, if it is used and claimed only in connection with a sufficiently complex combination of other things."

[3] And if there is added an inscription which both in its pictorial aspect and its meaning was calculated to confuse, if not to deceive, the plaintiff is entitled to an injunction. New England Awl Co. v. Marlborough Awl Co., supra; Enoch Morgan's Sons Co. v. Whittier Coburn Co. (C. C.) 118 Fed. 657, 661; Hildreth v. D. S. McDonald Co., 164 Mass. 16, 41 N. E. 56, 49 Am. St. Rep. 440; N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 77 Fed. 869, 23 C. C. A. 554; Lever v. Goodwin, L. R. 36 Ch. D. 1.

The sole question in such cases is: Does the adoption of the collocated features of the plaintiff's style of dress disclose a differentiation from that previously adopted, and by which the public has come to recognize the plaintiff's product? De Long Hook & Eye Co. v. Francis Hook & Eye & Fastener Co. (C. C.) 139 Fed. 146, 149.

Indeed, the test of infringement in such cases is the same as is applied in design patents; that is, whether ordinary purchasers would be misled by the similarity between the designs in controversy. Williams v. Brooks, 50 Conn. 278, 279, 47 Am. Rep. 642, citing Gorham Co. v. White, 14 Wall. 511, 20 L. Ed. 731.

[4] And as the purpose to be effected by an injunction in cases of unfair competition is not primarily to protect the purchasers, but to secure to the manufacturer the profit to be derived from the sale of his goods from all who may desire and intend to purchase them, the fact that the defendants may have acted in good faith and believed they were not infringing the plaintiff's rights is immaterial; the injury to the plaintiff remains the same. It is the liability to injury and an actual infringement which the remedy may be invoked to prevent. Williams v. Brooks, supra; Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904; N. K. Fairbank Co. v. Luckel, King & Cake Soap Co., 102 Fed. 327, 42 C. C. A. 376.

[5] Furthermore, the fact that careful buyers may not be deceived does not materially affect the question; it only shows that the injury is less, not that there is no injury. Another class of purchasers may be deceived, and, if they may be, the plaintiff is entitled to an injunction. Collinsplatt v. Finlayson (C. C.) 88 Fed. 693; Meriden Britannia Co. v. Parker, 39 Conn. 450, 12 Am. Rep. 401; International Silver Co. v. Roger's Corporation, 67 N. J. Eq. 646, 650,

60 Atl. 187, 110 Am. St. Rep. 506, 3 Ann. Cas. 804; Reading Stove Works v. S. M. Howes Co., supra, 201 Mass. 440, 87 N. E. 751, 21 L. R. A. (N. S.) 979; Lever v. Goodwin, supra, 3; Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 41, 21 Sup. Ct. 7, 45 L. Ed. 60.

In Celluloid Mfg. Co. v. Cellonite Mfg. Co. (C. C.) 32 Fed. 94, 97, Mr. Justice Bradley said:

"Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another."

Tested by these rules, I am satisfied that the Plaintiff's Exhibit B, annexed to the complaint, is a substantial infringement of Plaintiff's Exhibit A, and that an injunction should issue against the defendants, restraining them from manufacturing, selling, putting up, or offering for sale the particular form of package which has been referred to in the bill of complaint and put in evidence as Plaintiff's Exhibit B, or any part thereof, or any other form of package, or any part thereof, which shall, by reason of the collocation of size, shape, colors, lettering, spacing, and ornamentation, present a general appearance as closely resembling Plaintiff's Exhibit A referred to in the bill, as does the said Plaintiff's Exhibit B.

The Tate Manufacturing Company has not, under the circumstances, been damaged by the advertisement referred to, which is the subject of the petition for contempt; and although the advertisement and its repetition may have been ill-timed and ill-advised, they did not embarrass, impede, or obstruct the administration of justice. The petition for contempt, therefore, is denied.

Decree accordingly.