LALANCE & GROSJEAN MFG. CO. v. NATIONAL ENAMELING & STAMPING CO.

(Circuit Court, S. D. New York. April 15, 1901.)

1, UNFAIR COMPETITION—IMITATION OF LABELS.

While no one can have a trade-mark monopoly in color of paper or shape of label, in color of ink or in one or another detail, a general collocation of such details will be protected against an imitation, the natural result of which is to deceive purchasers, and which must, therefore, be presumed to have been adopted with that purpose.[1]

2. SAME—RIGHT TO INJUNCTION.

Defendant and its predecessors for many years used on their granite ware a lozenge-shaped label 1⅞ inches on a side, printed in black ink on

---

[1] As to misleading labels, see note to Raymond v. Baking-Powder Co., 29 C. C. A. 250.

grayish blue paper. Complainant subsequently commenced the manufacture of similar ware, and adopted a rectangular label $4^6/_{10}$ by $2\frac{1}{2}$ inches in size, printed in dark blue ink on light blue paper, with a trade device on the upper half. Three years after, defendant changed its label for one similar to complainant's in shape, size, and color of paper and ink, on the upper half of which it placed its old lozenge-shaped trademark. No necessity nor reason appeared for any change. *Held*, that the change must be presumed to have been designed to accomplish its natural result of suggesting complainant's label to retail purchasers, and that complainant was entitled to an injunction against the use of such label by defendant as unfair competition.

In Equity. Suit for unfair competition. On motion for preliminary injunction.

Walter D. Edmonds, for the motion.
Louis Marshall, opposed.

LACOMBE, Circuit Judge. The question on this motion as to whether the statements in defendant's labels that its coating for granite ironware and granite steelware is "absolutely free from any injurious ingredients" make out a case of unfair competition with complainant's goods, which are entirely free from arsenic. lead, and antimony, requires for its answer the determination of issues of fact as to which there is conflict in the affidavits; and, even if such issues were decided in complainant's favor, would present some novel aspects of the law of unfair competition. So much of the cause may, therefore, be best reserved for final hearing.

The other branch of the motion, however, is concerned with a familiar field of litigation. The contrasted labels (Schedules E, F, and G) reiterate an oft-told story. First we have the original label of defendant and its predecessors, printed in black ink on grayish blue paper, lozenge-shaped, $1\frac{4}{5}$ inches on the side, and which had been used continuously for 26 years, long before complainant began to manufacture ware of this kind. Next appears the complainant's rectangular label, printed in dark blue on light blue paper, $4^6/_{10}$ by $2\frac{1}{2}$ inches, with a device indicating trade designation in the upper half. This label was not introduced until 1897. Then, in 1900, defendant substitutes for its old label a new rectangular one, $4^7/_{10}$ by $2^6/_{10}$ inches, printed in dark blue on light blue paper, with its old lozenge-shaped trade-mark in the upper half. It is difficult to understand how any intelligent and unprejudiced mind can contemplate these contrasted exhibits, and reach any other conclusion than that the change was made with the intention of suggesting complainant's label to the retail purchaser. No amount of affidavits made by interested parties would be persuasive to the contrary. No necessity for any change at all is suggested, and, change being once decided on, it was so easy to make a change which would preserve the old lozenge, and still tend to differentiate between complainant's and defendant's goods, that a contrary course must be assumed to be designed to accomplish its natural result. It is no doubt true that no one can have a trade-mark monopoly in color of paper, or in shape of label, or in color of ink, or in one or another detail; but a general collocation of such details will be

protected. Complainant may take a preliminary injunction against the use of the labels Exhibit G, or of any similar labels which, by the collocation of size, colors, shape, spacing, and lettering, may present as close a resemblance to complainant's label Exhibit F as do the said labels Exhibit G.