## SMITH–KLINE & FRENCH CO. v. AMERICAN DRUGGISTS SYNDICATE.

(Circuit Court of Appeals, Second Circuit. April 27, 1921.)

No. 237.

1. **Trade-marks and trade-names ☞60—Red band with initial held not infringed by red parallelogram with different initials.**

Plaintiff's trade-mark for aspirin which, as registered, consisted of a red band around the box, on which band plaintiff's initials were printed, the representation of the box being expressly disclaimed as part of the trade-mark, is not infringed by defendant's trade-mark for aspirin, which consisted of a red parallelogram on which the name of the drug was printed and above the center of which was a red half circle containing defendant's initials.

2. **Trade-marks and trade-names ☞17—Color of paper alone cannot be claimed as trade-mark.**

One cannot have a trade-mark monopoly in the color of paper alone.

3. **Trade-marks and trade-names ☞70(4)—Unfair competition held not shown by use of somewhat similar package.**

That, while plaintiff was using a flat paper box on which its red band trade-mark was placed, defendant adopted as a container for the same drug a green enameled tin box, on which its red parallelogram trade-mark was placed does not show unfair competition by defendant, after plaintiff had begun to use a container similar to defendant's, though there was evidence that on occasions when red band aspirin, by which name plaintiff's product had been known, was asked for, defendant's product was sold.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Smith-Kline & French Company against the American Druggists Syndicate for infringement of a registered trade-mark and for unfair competition. Decree for plaintiff, and defendant appeals. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hauff & Warland, of New York City (John C. Tomlinson and William E. Warland, both of New York City, and James Hamilton Lewis, of Chicago, Ill., of counsel), for appellant.

Julian S. Wooster, of New York City (Frank B. Fox, Henry N. Paul, Jr., and Joseph C. Fraley, all of Philadelphia, Pa., of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. On the 19th of December, 1918, the appellee filed in the Patent Office of the United States, an application for a registered trade-mark for aspirin tablets, and on September 23, 1919, a certificate of registration, No. 126,617, was granted. The mark adopted and used was a red colored band with initials. The representation of the box formed no part of the mark. In the affidavit, the trade-mark is said to have been used continuously since March 1, 1917. The trade-mark is applied and affixed to the packages containing the goods by placing thereon a printed label, on which the mark is shown with the initials "S. K. & F." across the red band.

On October 24, 1916, the appellant obtained a certificate of registration, No. 113,541, of its trade-mark. It was registered in the same class as the appellee's. The mark consists of a label, a semicircle; there being printed on the label the letters "A. D. S." in white. The appellant and appellee are manufacturers of and dealers in drugs and pharmaceutical supplies. Among the variety of goods which each manufactures and sells are aspirin tablets. The claim of infringement and unfair competition arises from the use of the mark on the box or package which is used by the appellant in marketing its goods. The appellant adopted its label in 1907, and has continuously used it on many of its goods ever since. The body of the label so used was in white, or a color approaching white, with the name of the article printed in the same color upon a red background, consisting in some cases of a rectangle, and in some others of a red band or stripe, and over the center of this red block was a red semicircle, upon which was printed in the same colors as the lettering on the band, the letters "A. D. S." Such labels were used on a great variety of its products, and the sales between the year 1912 and the date of the trial of this action amounted to $4,300,000, or about 2,500,000 dozen packages.

On February 27, 1917, the Bayer patent on aspirin expired, and both the appellant and appellee entered the field in the manufacture and sale of aspirin tablets. The appellee marketed its aspirin tablets in a paper box with a solid red band around it. The record is clear that, when it did so, it knew of the extensive use of the label by the appellant. It was prior to January, 1919, when the appellant decided to put aspirin on the market in small retail tin containers. It then contracted for such tin packages with the Metal Package Corporation. The trade-mark of the appellant is substantially the same as that which has been used by it on its labels for a long period prior. The box came on the market June 5, 1919. In either March or April, 1919, the appellee decided to use a package of similar size, duplicating what had previously been

adopted by the appellant in marketing its aspirin. On July 16, 1919, after the appellant had obtained its tin boxes, the appellee placed an order with a can manufacturer adopting the appellee's tin box. It placed its trade-mark thereon and then commenced the sale of its aspirin in such packages. Its claim here is that the appellant has infringed its trade-mark and that, in selling aspirin tablets in such packages with the label or mark used by the appellant thereon, it is engaged in unfair competition, resulting in damages to the appellee.

[1] We think it was error to hold that the appellant has infringed appellee's trade-mark. The trade-mark granted shows a rectangular box with a band of about one-third the width of the box, with the initials "S. K. & F." running diagonally on the band. The statement in the Patent Office contains the following: "The representation of the box forms no part of the mark." All that the trade-mark shows is a red band with the appellee's initials on it. The form of the box having been disclaimed, there is nothing to show the size or shape of the band, and the appellee has made the initials on the band an essential and integral part of such band. It is stated that "the description and drawing presented truly represents the trade-mark sought to be registered."

The appellant's red mark is different in sufficient identifying respects. It is a solid red stripe or parallelogram, instead of a band proper. It has above the center of the band constituting a part of it, a red semicircle about one-third of the length of the red background, and of a height about equal to the width of the stripe. The initials "S. K. & F." are absent. The word "aspirin" appears, and, in the semicircle, the letters "A. D. S." In no sense can it be said that the appellant's mark has a "band." The stripe of the appellant's does not go to the edge of the box. The band of the appellee goes around and encircles the box. The registered trade-mark which the appellee possesses must be limited to the specific design shown. The mere color may be impressed in a particular design and constitute a valid trade-mark, such as a circle, square, triangle, cross, or star. Leschen Rope Co. v. Broderick & Bascom Rope Co., 201 U. S. 166, 26 Sup. Ct. 425, 50 L. Ed. 710. But with a parallelogram and not a band used, and without the initials of the appellee, but with prominent use of the initials of the appellant in the semicircle constructed above the parallelogram of the appellant and attached thereto, such would not constitute a use of the appellee's trademark. Schlitz Brewing Co. v. Houston Ice Co., 250 U. S. 28, 39 Sup. Ct. 401, 63 L. Ed. 822.

[2] In the Schlitz Case the manufacturer of beer claimed the exclusive right to use brown bottles with brown labels. It was held there that the adoption by a competitor may contribute to a wrongful deception, if combined with an imitative inscription, but that, where the label was dissimilar to the plaintiff's in shape, script, meaning, and mode of attachment, it could not be said to add appreciably to the deception which might arise from the brown label or bottle.

"But it is true that the unlawful imitation must be what achieves the deception, even though it could do so only on the special background lawfully used."

Using a green color in soap, or on a wrapper or box of soap cannot be enjoined. Omega Oil v. Weschler, 35 Misc. Rep. 441, 71 N. Y. Supp. 983. One cannot have a trade-mark monopoly in the color of paper alone. Lalance & Grosjean Mfg. Co. v. Nat. Enameling & Stamping Co. (C. C.) 109 Fed. 317. The appellee's aspirin has been called the "red band" aspirin. It therefore claims the exclusive right to use the package with the red band upon it and call it "red band" aspirin. But to use this name is merely descriptive of the appellee's mark, which the appellant does not infringe.

[3] Nor do we think that this record discloses a case of unfair competition. Prior to the adoption of a metal box, the appellee used a paper package. The paper box was thinner than the tin box. It was flat, with sharp square corners. The color was white, with a red band. The appellant had a greenish white enamel on its tin box. It had rounded corners and a convex cover, and the only point of resemblance is that on both boxes there was the red color of the label or mark. But when the appellee came into the market, and adopted the tin box, it did so after the appellant's adoption of such box. The appellee accepted the original design as selected by the appellant. It was a box of the same material, same size and shape, having the same general color scheme. The lettering was in many respects identical. The appellant placed its mark upon it, which consisted of a parallelogram and a semicircle at the top connected therewith, and its initials "A. D. S." on the semicircle. The appellee adhered to its initials placed across the red band. The appellant is enjoined from the use of the tin box. There could be no confusion between the packages by the ordinary observer. If there be an imitation or attempt to imitate, we think the appellee made the attempt. With full knowledge of the appellant's use of the red color and its label, the appellee adopted a red band as a trademark. It then, after the appellant had entered the field in using the tin box, chose a tin box resembling closely the shape and size of the appellant's, and placed its trade-mark thereon, and proceeded in competition in the sale of aspirin tablets.

We think by no possibility could the ordinary observer be confused between the appellee's and appellant's boxes and the marks placed thereon. Whatever confusion may have resulted was brought about by the appellee's imitation and selection of the type of tin box used by the appellant. There are three incidents which are called to our attention as evidence of confusion between the containers of the appellee and appellant. The first was a decoy order, given appellant for "red band" aspirin, and which was filled by sending the appellant's product. The second was found on exhibition, a large box, on a druggist's counter, with three containers of appellant's aspirin and six containers of appellee's therein. The third is when purchases of aspirin were made at two retail drug stores by employés of the appellee who, when they purchased, merely asked for "red band" aspirin, and were given aspirin tablets of the appellant. The circumstances which led up to each of these instances, do not justify the claim of confusion. Mere similarity is not, as a matter of law, conclusive evidence of intention to deceive.

Such intent must be inferred as a matter of fact from similarity. Form, color, and general appearance may be considered. The greater the number of points of similarity, the stronger is the inference of an intentional imitation with intent to deceive. But with the well-defined marks of each of the litigants upon the red stripe across the face of each mark we think it unlikely that the ordinary observer would be mistaken or that deception was likely. Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847.

The appellant in its answer filed a counterclaim and asked for affirmative injunctive relief. The reasons which we have assigned for denying relief to the appellee hold with equal force as against the claim of the appellant, and for the same reasons the appellant cannot succeed.

Decree reversed.