**TURNER & SEYMOUR MFG. CO. v. A. & J. MFG. CO. et al.**

Circuit Court of Appeals, Second Circuit.

June 16, 1927.

No. 348.

1. **Trade-marks and trade-names and unfair competition** ⊜93(3)—**Decree forbidding use of color blue on egg beater and box in which it was sold held erroneous under evidence.**

In suit for infringement of trade-marks and unfair competition in trade decree granting injunction against use of color blue on egg beater and box in which it was sold by defendant *held* erroneous, in view of evidence and related general use of color blue in kitchen utensils.

2. **Trade-marks and trade-names and unfair competition** ⊜93(3)—173,922, **covering "Blue Whirl," accompanied by symbol, for egg beaters, held not infringed.**

Trade-mark 173,922, covering "Blue Whirl," accompanied by symbol, as trade-mark for egg beaters, *held* not infringed.

3. **Trade-marks and trade-names and unfair competition** ⊜93(3)—**Reissue 188,983, covering "Blue Streak," accompanied by symbol, for can opener, held not infringed.**

Reissue 188,983, covering "Blue Streak," accompanied by symbol, as trade-mark for can openers, *held* not infringed.

4. **Trade-marks and trade-names and unfair competition** ⊜68(2)—**Merchant need not designate goods so that careless buyers will know by whom they are made and sold.**

It is not necessary for a merchant to so designate his goods that careless buyers will know by whom they are made and sold, and in order to succeed in unfair competition it must appear that deception will be natural and probable result of defendant's acts.

5. **Trade-marks and trade-names and unfair competition** ⊜68(1)—**Essence of wrong in "unfair competition" is palming off goods as another's merchandise.**

The essence of wrong in "unfair competition" is that defendants are palming off their goods as merchandise of another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

6. **Trade-marks and trade-names and unfair competition** ⊜17—**Colors ordinarily cannot be appropriated as trade-marks.**

Ordinarily colors of themselves cannot be appropriated as trade-marks.

7. **Trade-marks and trade-names and unfair competition** ⊜17—**Color alone, unaccompanied by any distinguishing sign, seal, or symbol, will not constitute "trade-mark."**

A trader may not monopolize a particular color, and that color alone, unaccompanied by any distinguishing sign, seal, or symbol, is not sufficient to constitute a "trade-mark."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trade-Mark.]

8. **Trade-marks and trade-names and unfair competition** ⊜70(1)—**Equity will not interfere, where attention of purchaser of article would enable him to distinguish it from others.**

Where attention by purchaser of article will enable him at once to distinguish one from the other, court of equity will not interfere.

Appeal from the District Court of the United States for the Northern District of New York.

Suit by the Turner & Seymour Manufacturing Company against the A. & J. Manufacturing Company and another for infringement of trade-marks and unfair competition in trade. Decree for plaintiff, granting an injunction against unfair competition in trade, and both parties appeal. Reversed.

Cooper & Terry, of Binghamton, N. Y., and Dyer Smith, of New York City, for plaintiff.

Davies, Auerbach & Cornell, of New York City (Martin A. Schenck and Thomas J. Byrne, both of New York City, of counsel), for defendants.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. The parties will be referred to as below. The plaintiff had issued to it on October 2, 1923, a registered trade-mark, No. 173,922, and No. 188,983, issued on September 9, 1924. They covered, respectively, "Blue Whirl" accompanied by a symbol as a trade-mark for egg beaters, and "Blue Streak" accompanied by a symbol as a trade-mark for a can opener. The decree below enjoins the defendants from (a) selling or offering for sale egg beaters having handles tipped or otherwise colored in blue, with or without bowls, or other accessories in boxes and packages colored blue, white, or other color, where the name "Blu-tip" or "Blue Tip" appears, alone or with other words thereon or therein at any time; (b) from selling or offering for sale egg beaters having handles tipped or otherwise colored in blue, with or without bowls or other accessories, in boxes or packages, where the box or package is colored wholly or substantially in any shade of blue, and contains the name "Blue Tip" alone or in combination with other words thereon or therein at any place; and (c) from selling or offering for sale egg beaters having handles tipped or otherwise colored in blue, with or without bowls and/or other accessories in boxes or packages where the box or package is colored wholly or substantially in any shade of blue.

The court sustained the trade-mark, but held that the defendants, by reason of the use of the trade-mark, consisting of the words "Blue Tip" and in painting blue the ends of the handles of its egg beaters and can openers, did not infringe upon the trade-mark of the plaintiff, consisting of the words "Blue Whirl" and a symbol; the court declined to hold the words "Blue Streak" and the symbol, the trade-mark used for the can opener, was infringed. He also held that there was no unfair competition by the defendants in the manufacture and sale of its can openers. The defendants, in manufacturing the can opener, painted the ends of the handle blue.

The plaintiff has filed an application for a trade-mark consisting in painting the whole of the handle of the egg beater in blue. The application for this registration was placed in interference by the Patent Office with the trade-marks of the defendants, registered No. 202,467, which was granted August 25, 1925, and which consisted in painting or tipping the ends of the handles of egg beaters and can openers in blue. The defendants moved to dissolve that interference proceeding (a) because there was no interference in law or in fact existing between the appropriated mark of the plaintiff and the trade-mark of the defendant; (b) that the appropriated trade-mark, the subject of plaintiff's application, was not a true trade-mark. This motion was sustained, and it was ruled that the two marks were not identical, and that they were not so near resembling each other as to be likely to cause confusion or mislead the public mind, and that the plaintiff's proposed mark for color was not registerable.

Plaintiff's egg beater is sold under the trade-mark "Blue Whirl," with both handles enameled a robin's egg blue. It is sold in a blue box, one to a box. On the box is printed a guaranty of the excellence of the material and unlimited replacement. The defendants sell their egg beater under the trade-mark "Blue Tip." Extensive advertising and sales effort has been carried on by the plaintiff, and the claim is that the public associates the blue handle, the blue name, and the blue box with both the egg beater and the can opener which the plaintiff manufactures. The defendants sold their "Blue Tip" egg beater and can opener about two years after the "Blue Whirl" appeared on the market and about one year after the "Blue Streak."

Both plaintiff and defendants are well-known, large, and responsible manufacturers. The defendants sold in 1925, 4,000,000 egg beaters. The mechanism of the egg beaters sold by both plaintiff and defendants is the same. The handles are different. The defendants' has an egg-shaped wooden handle; the plaintiff's had a metal handle spade-shaped. The defendants have used blue as a color on their crockery bowl, sold with the egg-beater device since 1908, and packaged the beater in individual cartons with blue and blue lettering since that time. They sold continuously since that time under such labels and color. It also appears that the defendants, since 1908, have sold their egg beaters in solid colors other than blue, and changed the color from time to time. There is proof that blue was a common kitchen color and that the defendants experimented in designs in blue in the latter part of 1921. Handles of these colors were manufactured. They made up blue samples for their egg beaters and other kitchen tool line. They had an inquiry from one of the large chain stores as to a toy

line in blue about January, 1923, about the time the plaintiff put its article on the market. Defendants' good faith in adopting the blue color may not be questioned.

There is proof in this record that blue, both light and dark shades, had long been in common use on kitchen articles, such as cereal sets, crockery sets, kitchen clocks, stoves, and linoleums. The defendants' bowl, used in connection with the egg beater, was in use for some years—since 1908; the plaintiff first put its "Blue Whirl" egg beater on the market in April, 1923, and its "Blue Streak" can opener in April, 1924. Kitchen utensils in light blue, under the name of "Ski-Blue," were in use since 1916. Cups, spoons, ladles, dippers, and other utensils in blue were on the market since 1910.

Trade-marks were granted, in which the word "blue" was used for kitchen utensils and similar wares, as "Blue Diamond" since 1901 for hatchets, knives and edged tools, screw drivers, and hand tools; "Blue Oak" since 1909 on tool handles, cutlery, and machinery; "Blue Ribbon" since 1922 for scrubbing and polishing mops; "Blue Line" for cutlery and machinery since 1915; "Blue Stone" since 1899 for enamel ware; "True Blue" since 1896 for knives and table cutlery; "Blue Jay" for brooms, dusters, and brushes since 1906; "Blue Streak" for tools since 1909. The Talpan standard egg beater, with a solid blue handle and sold under the name of "Blue Girl," had been used for two years prior to the trial.

There is evidence that the defendants experienced inquiries, as did other egg-beater manufacturers, from time to time, concerning substitutions, corrections, and repairs. They, of course, involved egg beaters of different colored handles than blue. The evidence of confusion of plaintiff's "Blue Whirl" with defendants' "Blue Tip" is very slight. Defendants proved they had never received, for substitution, correction, or repair, any "Blue Whirl" or "Blue Streak" for "Blue Tip" merchandise. The only evidence is one letter, addressed to the defendants, asking for a "Blue Whirl" can opener. This was at once forwarded to the plaintiff, and resulted in a letter from the plaintiff to the defendants, and started the investigation resulting in this suit.

The defendants' egg beater is used with a bowl, and has attached to the handle of the egg beater a large circular disk or batter plate, which, in operation, constitutes a cover for the bowl. This is not found in the plaintiff's device. The carton in which the defendants' egg beater and bowl are packed is of a different shape and size than the plaintiff's carton. Its appearance is different, and should not be mistaken for the plaintiff's carton. There is no evidence of confusion in the vending of the egg beater while in the box. Defendants' egg beater has an egg-shaped handle, while the plaintiff's is a looped handle of metal, or what might otherwise be called a spade-shaped handle. The defendants do not sell the center drive egg beater, as does the plaintiff. The plaintiff makes it a practice of selling its egg beater in a vending carton on which it has its trade-mark "Blue Whirl" with a symbol, described as an arbitrary symbol appearing as a "whirl-gig."

The defendants' can-opener mechanism differs from the plaintiff's. The shape of the metal parts is different. The handle of one is white with a blue tip. The handle of the plaintiff's is entirely blue. The vending box of the plaintiff, which is blue and white, is for a large-sized can opener. The size of the box and general appearance is different from that of the defendants' carton. There is no evidence of confusion with the plaintiff's "Blue Streak," as the court below found.

The evidence of confusion as to the egg beater consists of incidents, such as where the plaintiff's salesman went into a store in Detroit, Mich., and asked if the storekeeper handled "Blue Whirl" egg beaters. The store saleswoman asked if he did not have reference to "Blue Tip." When he said "No," he wanted "Blue Whirl," she went to another counter and produced the "Blue Whirl" egg beater. In another case, the same salesman went to a store in Binghamton, N. Y., and asked the clerk if she carried "Blue Whirl." She said she did not know where they were, but would find them. She produced a "Blue Tip," which he purchased and paid for. This was an egg beater and bowl. A storekeeper from Port Huron, Mich., sent an order for "one dozen, household size, Blue Streak bowls and beaters," to which the plaintiff replied that he believed the purchaser wanted a dozen of the "Blue Whirl" egg beaters, illustrated in a folder which he enclosed, and stated that bowls were not furnished with these beaters, to which the Michigan merchant replied that they had made a mistake in sending this order; that they "should have sent it to the A. & J. Manufacturing Company of Binghamton, N. Y., for 'Blue Tip' beaters and bowls," and apologized for their error. John Wanamaker, of Philadelphia, sent an order for six dozen large "Blue Whirls," and added one dozen extra jars only for "Blue Tip" egg beater. A storekeeper in Iron Mountain, Mich., sold

"Blue Whirl" egg beaters and "Blue Tip" bowls. He ordered through the jobber's salesman by catalogue designation. On one occasion, a "Blue Tip" egg beater and bowl was returned by a customer for repair and this was sent to the plaintiff. There was no confusion, however, as explained in his letter. The storekeeper did not know the name of the manufacturer, and said: "We are anxious to make good and did not know where to send it, and thought the Turner & Seymour people would be willing to put us straight on it, and, if they did not manufacture it, they would know who did." These are the proofs advanced on the claim of confusion.

The decree below rests upon the use of the blue color on the handle of the egg beater and on the boxes in which they are marketed, and in its trade-mark. But, as pointed out, the use of blue on tools and other kitchen utensils has long been common property in merchandising. Mere color cannot be appropriated, as plaintiff attempts to do, and has succeeded in doing below. Blue boxes have been used steadily by the defendants since 1908, and the defendants are now enjoined from using that box by this plaintiff's application—who started to use a blue box in 1923. The common use of blue-colored kitchen utensils, sold by other merchants as pots, pans, and ladles, has been without confusion.

As to the trade-mark, there is no claim of use or method of using the blue color, or of arbitrary use of blue as a basis of the trade-mark, and there is an absence of proof that the defendants' "Blue Tip" egg beater and bowl may be regarded as an additional line of the plaintiff's ware. There is no evidence at all that the defendants' egg beater or can opener was offered for sale or represented as the egg beater or can opener of the plaintiff by any one. The defendants' purpose in using the blue color, and the coined words "Blue Tip," is legitimate. The use of this might not induce the purchase of plaintiff's article.

[1] Upon this unsatisfactory proof, in view of the related use of the blue color in kitchen utensils, it was erroneous to forbid the defendants' use of blue in its egg beater and box in which it was sold.

[2-5] Nor is the trade-mark "Blue Whirl" or "Blue Streak" infringed. Both consist of the words and a symbol. The only similarity is in the syllable "Blue" in the defendants' trade-mark. But the word "blue," used by both plaintiff and defendants, was common property, and commonly used by manufacturers of kitchen utensils, as pointed out. There have been other trade-marks issued where the

word "Blue" appears. The trade-marks of the plaintiff and defendants are not confusingly similar. No ordinary purchaser would take one for the other, even in combination with blue. It is not necessary for a merchant to so designate his goods that careless buyers will know by whom they are made and sold. Sears-Roebuck Co. v. Elliott Varnish Co. (C. C. A.) 232 F. 588; S. R. Peil Co. v. John E. Robbins (C. C. A.) 220 F. 650; Wrisley Co. v. Iowa Soap Co. (C. C. A.) 122 F. 796. In order to succeed in unfair competition, it must appear that deception will be the natural and probable result of defendants' acts. Florence Mfg. Co. v. Dowd (C. C. A.) 178 F. 73; O'Connell v. Nat. Water Co. (C. C. A.) 161 F. 545; Enterprise Mfg. Co. v. Landers (C. C. A.) 131 F. 240. The essence of the wrong in unfair competition is that the defendants are palming off their goods as the merchandise of another. If the defendants so conduct their business as not to palm off their goods as those of the plaintiff, the suit falls. Charles Broadway Rouss, Inc., v. Winchester Co. (C. C. A.) 300 F. 706; Auto Light Co. v. Prest-O-Lite Co. (C. C. A.) 264 F. 810.

[6, 7] Ordinarily, colors of themselves cannot be appropriated as trade-marks. Smith-Kline & French Co. v. American Druggists Syndicate (C. C. A.) 273 F. 84; Lalance & Grosjean Mfg. Co. v. Nat'l Enameling & Stamping Co. (C. C.) 109 F. 317. But color which is nonfunctional and distinctive in a drink, as in Coca-Cola Co. v. Gay-Ola Co. (C. C. A.) 200 F. 720, or whisky, as in Walker v. Grubman (D. C.) 222 F. 478, may not be copied in violation of an established mark, and has been held to be in fraudulent competition. The use of blue by both plaintiff and defendants, which color is common to the trade for kitchen utensils, and for which the plaintiff has no exclusive right, will not be protected by injunction, so as to afford it a monopoly. Taylor v. Bostick (C. C. A.) 299 F. 232. As there said:

"It is a well-settled general rule of law that a trader may not monopolize a particular color, and that color alone, unaccompanied by any distinguishing sign, seal, or symbol, is not sufficient to constitute a trade-mark."

[8] Where attention by the purchaser of the article will enable him to at once distinguish one from the other, a court of equity will not interfere. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Wornova Mfg. Co. v. McCawley & Co. (C. C. A.) 11 F.(2d) 465.

In view of the use of the word "blue" and the color in the trade of manufacturing and marketing kitchen utensils, and the slight evidence of confusion, if any, there was no basis

for an injunction as in restraint of plaintiff's trade-marks. We hold that the trade-mark "Blue Tip" does not infringe "Blue Whirl" or "Blue Streak."

Decree reversed, with costs.