## WISE v. BRISTOL—MYERS CO.

United States District Court
S. D. New York.

July 22, 1952.

Schaines & Liberman, William R. Liberman, New York City, for plaintiff.

Fish, Richardson & Neave, H. C. Dieserud, William E. Moss III, and Rynn Berry, New York City, for defendant.

BONDY, District Judge.

This is a suit for trade-mark infringement and unfair competition. The parties are citizens of different states.

Plaintiff claims that his registered trademark "BUpH 3.5" and his common-law rights to the exclusive use of the word "Buff" are infringed by defendant's use of the word "Bufferin" as the name of defendant's product. Plaintiff's product is an antacid tablet for control of gastric acidity and it consists of a mixture of citrated and phosphated salts of calcium and sodium. Defendant's product is a pain reliever for use against headaches, neuralgias and colds. It contains aspirin and ingredients to counteract the acidity of aspirin, and all of its ingredients differ from those used in plaintiff's product. It is described by defendant as an "antacid analgesic" and its antacid qualities are stressed in advertisements by the defendant.

The validity of plaintiff's registration of "BUpH 3.5" is questioned by the defendant because contrary to the statement

in the application for registration of his trade-mark, plaintiff had not made any use of the mark in interstate commerce until after the filing of the application. Such use at or before the time of filing is required to support the exercise of Congressional authority for the registration. Motlow v. Oldetyme Distillers, Inc., 88 F.2d 732, 24 C.C.P.A., Patents, 1094; see Continental Distilling Corp. v. Old Charter Distillery Co., 88 U.S.App.D.C. 73, 188 F.2d 614, 620; Macaulay v. Malt-Diastase Co., 55 App.D.C. 277, 4 F.2d 944; United States v. Steffens, 100 U.S. 82, 25 L.Ed. 550; see Trade Mark Act of 1905, Sec. 2, 33 Stat. 724, now 15 U.S.C.A. §§ 1051, 1061. However, since plaintiff used the "BUpH 3.5" mark prior to defendant's use of "Bufferin", the alleged invalidity of the registration is immaterial, because it does not affect plaintiff's common-law rights, if any, in his trade-mark or his right to be free from unfair competition.

The label in use by plaintiff bears the name "BUpH 3.5" in large type and immediately thereunder, in small black type, in parentheses, the words "Pronounced 'Buff'". Defendant contends that neither "BUpH" nor "Buff" can be used as a trade-mark for an antacid product because they are descriptive of the buffered nature of such products.

The term "buffer" is admittedly descriptive. It is a term commonly applied in the pharmaceutical trade to substances, solutions of which remain fairly constant in acidity notwithstanding the addition of considerable quantities of acid or base.

Plaintiff concedes the descriptive character of the word "buffer" but denies defendant's contention that "buff" is a synonym or contraction of the word "buffer". Shuchman, a pharmacist, testified that he heard the word "buff" used in the pharmaceutical trade as a contraction of "buffer". Such use in the trade was denied by plaintiff, also a pharmacist. Defendant's officer, Brown, though familiar with the term "buffer" never heard of "buff" being used in a technical sense in place of "buffer". Webster's New International Dictionary, (2d ed. 1951) gives a technical chemical meaning for "buffer" but

none for "buff". Shuchman's testimony that the words have the same meaning was not substantiated by any text-book or dictionary.

■■ To establish the descriptive meaning of "buff" as a contraction of "buffer" before plaintiff's use of his mark, defendant introduced in evidence eight certificates of registration of trade-marks in the pharmaceutical class which used "buff" or "buf" as part of the mark. See Sales Affiliates, Inc. v. Calva, 88 U.S.P.Q. 443, 444. However, only two of these, "Bufflac" and "Buffate" relate to products designed for the control of gastric acidity on the buffer principle. The court is of the opinion that the word "buff" is merely suggestive but not descriptive of the buffered quality of pharmaceutical products.

"pH" is the chemical symbol for the acidity of a solution and "ph 3.5" is descriptive of the degree of acidity which plaintiff's product is supposed to maintain. However, the syllable "BU" is arbitrary and the word "BUpH" is not descriptive. Plaintiff expressly disclaimed any right to "pH 3.5" apart from the entire mark "BUpH 3.5". The mark "BUpH 3.5" accordingly is believed to be a valid trade-mark.

However, the defendant's use of the name "Bufferin" does not constitute any infringement of the plaintiff's trade-mark. "Buffer" is a word in common use in the pharmaceutical trade and is descriptive of the characteristics of the products of both plaintiff and defendant. Defendant has the right to use the word "buffer" to indicate the buffered nature of its product. One can not acquire a trade-mark right in a descriptive word because the allowance of such right would preclude others from exercising their right to use the proper word to describe a similar characteristic of their products. Plaintiff accordingly could not acquire an exclusive trade-mark right to use the word "buffer". He can not achieve the same result by indirection, through the simple expedient of adopting only a meaningless part of the descriptive word, without which part the proper descriptive word could not be used. Parmele Pharmacal Co. v. Weiner, D.C., 5 F.2d 750, affirmed 2 Cir., 5 F.2d 751; Hygienic

Fleeced Underwear Co. v. Way, 3 Cir., 137 F. 592, 595; See Nims, Unfair Competition and Trade Marks, 4th ed., Secs. 201, 221g.

Plaintiff does not claim any exclusive right through any secondary meaning for its mark "BUpH 3.5" or for the use of the words "BUpH" or "Buff". Accordingly though plaintiff would be protected under his trade-mark against non-descriptive imitation by words appearing or sounding alike, he is not entitled to trade-mark protection against defendant's use of "Buff" as part of the descriptive name "Bufferin". Notwithstanding the use of the suffix "in" "Bufferin" is descriptive because it would inform any person familiar with the word "buffer" of the buffered characteristic of the product. Parmele Pharmacal Co. v. Weiner, supra. It is not material that the word "buffer" is mostly known in trade circles, and may be unknown to a large portion of the general public. Vibroplex Co., Inc., v. J. H. Bunnell & Co., Inc., 2 Cir., 23 F.2d 490. The defendant accordingly has a right to use the word "Bufferin" provided it does not conduct its business in a manner which constitutes unfair competition.

Plaintiff claims that there have been instances of sales of defendant's product upon requests for plaintiff's product and that confusion is likely to continue in the future. To establish confusion, plaintiff introduced evidence of a shopping survey conducted in 1948 at his request by twelve college students.

Three teams, each consisting of two students, were instructed to ask for "Buff antacid tablets" in drug stores in assigned areas in New York City, and three teams, likewise consisting of two students each, were to ask for "Buff 3.5 antacid tablets". They were to purchase without any resistance whatever was offered and record whatever was said or done. They visited 105 stores, purchased plaintiff's product six times and defendant's product forty-six times, and were told in forty of the stores that the product asked for was either unavailable or unknown therein.

The shoppers' reports disclose that in about half the stores in which plaintiff's shoppers received "Bufferin", the salesmen did not sell the "Bufferin" until after they had made inquiries to determine whether that was in fact the product desired. The shoppers were asked to repeat their request, they were shown "Bufferin" and asked whether that was what they wanted, and on several occasions, they were told to return the "Bufferin" if it was not what was wanted. Some salesmen expressed the belief that the shopper desired "Bufferin" but had mistaken the name.

A survey by agents of defendant established that plaintiff's "BUpH 3.5" had never been heard of in the great majority of the stores visited by plaintiff's shoppers. Apparently the clerks who sold "Bufferin" to the shoppers, being ignorant of plaintiff's product, believed that the shoppers probably meant to buy defendant's widely advertised product "Bufferin". This belief seemed to be confirmed by the shoppers' acceptance of "Bufferin", in many cases after the attention of the shoppers was called to the fact that they were receiving "Bufferin", and not what they had asked for. The shoppers' behavior seemed that of persons who vaguely recalled the word "Bufferin" which is widely advertised to the public through national magazines, radio and similar media. On the other hand, "BUpH 3.5" is advertised only to the medical profession through the mail and professional journals, and not to the general public.

The test is whether reasonably careful purchasers would be confused and would be likely to purchase defendant's product, believing it to be plaintiff's.

Since plaintiff is not entitled to trade-mark protection against "Bufferin", and none of the marks claimed by plaintiff has acquired any secondary meaning, he must prove that confusion is due to similarities other than that of the names used. Even if secondary meaning has been acquired, defendant will not be enjoined if the labels and bottles are so dissimilar that reasonably careful purchasers would not be deceived, notwithstanding similarity in names. See Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co., 2 Cir., 20 F.2d 298, 301; Richmond Remedies Co. v. Dr. Miles Medical

804

Co., 8 Cir., 16 F.2d 598, 602–604; Postum Cereal Co. v. American Health Food Co., 7 Cir., 119 F. 848. The only possibility of confusion indicated by the evidence would be due to plaintiff's use of the word "BUpH" and defendant's use of the word "Bufferin".

The colors, the wording and the designs on the labels are unmistakably different. On the plaintiff's label, the name "BUpH 3.5" is printed in large letters, with "BU" in black and "pH 3.5" in red type. Defendant's label has a wide blue horizontal stripe with the name "Bufferin" in large white letters. The names of the respective manufacturers, "Rawl" and "Bristol-Myers Co." are prominently featured on their respective labels. The plaintiff's labels are red, white and black, the defendant's blue and white. The ingredients specified on them are entirely different. The bottles likewise differ in shape and color.

Moreover, the intended uses are different. Plaintiff's product is intended solely as an antacid. The label of plaintiff describes the product as "The Scientifically Buffered Antacid". Defendant's label bears the words "Antacid Analgesic" and expressly specifies that it is "For fast, safe pain relief in simple headaches, neuralgias and colds". It also states in conspicuous letters "Goes To Work *twice as fast* As Aspirin". Furthermore, while the "BUpH" in plaintiff's mark is likely to be pronounced "Buff", and the defendant uses "Buff" as the first syllable of "Bufferin", the remaining parts of the marks are totally dissimilar.

█ Since casual attention will enable a reasonably prudent purchaser at once to distinguish plaintiff's bottle and label from defendant's, a court of equity will not interfere although names are similar. Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co., supra, 20 F.2d at page 301; Richmond Remedies Co. v. Dr. Miles Medical Co., supra; Postum Cereal Co. v. American Health Food Co., supra.

Plaintiff knew of the possibility that confusion would result if he decided upon the use of the "BUpH 3.5" mark. See Steem Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 118 F.2d 122, 127. His attorney wrote to him that registration of "Bupher", either by itself or in association with numerals such as "BUPH 35" would probably be refused because of the previous registration of the trade-mark "Buffate" upon an antacid for the control of gastric acidity. The letter also informed him that the trade-mark examiner stated that the dictionary defines "buffer" as a counter agent for acid conditions and hence, the word "Bupher" would in all probabilities be held to be descriptive. His attorney suggested the adoption of some other mark.

Plaintiff in adopting thereafter "BUpH 3.5" must have understood that purchasers would distinguish his product from "Buffate" (pronounced Buff-8) and others using "Buff" as only a part of their mark and they should therefore be able to distinguish between "BUpH 3.5S" and "Bufferin". Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co., supra; Prichard & Constance, Inc., v. Aime Co., Inc., D.C., 5 F.Supp. 282, 284.

The plaintiff stated in a letter, "The name BUpH 3.5 * * * is meant to convey to the physician the fact that it operates on the buffer principle in the pH range of 3.5." The defendant likewise adopted the name "Bufferin" to suggest that its product is a buffered aspirin. The record does not disclose any fraudulent intent on the part of the defendant. It is not reasonable to believe that defendant adopted the name "Bufferin" to exploit the good will of plaintiff in "Buff". At the time the distribution of "Bufferin" began the total sales of plaintiff's product for a period of over one year amounted to less than $160.

The court accordingly concludes that defendant is entitled to judgment dismissing the complaint.

The foregoing shall be considered to include findings of fact and conclusions of law, unless the parties desire more detailed findings, in which event they may be submitted upon notice.