RICHMOND REMEDIES CO. v. DR. MILES MEDICAL CO.

(Circuit Court of Appeals, Eighth Circuit. November 22, 1926.)

No. 7415.

1. Trade-marks and trade-names and unfair competition ⚖️3(4)—"Samaritan Nervine" held not valid trade-mark (Act Feb. 20, 1905 [Comp. St. § 9490]).

The word "Nervine" held descriptive, and not subject to appropriation, nor registrable, as a trade-mark, alone or in combination with another word, as "Samaritan Nervine," when

not within the fourth proviso of section 5 (b) of Act Feb. 20, 1905 (Comp. St. § 9490).

**2. Trade-marks and trade-names and unfair competition ⟨⇒⟩45—Registration under unconstitutional statute gave no rights (Act July 8, 1870 [16 Stat. 198]).**

Registration of a trade-mark under the unconstitutional Act of July 8, 1870 (16 Stat. 198), gave the person registering no right in the words registered.

**3. Trade-marks and trade-names and unfair competition ⟨⇒⟩3(1)—Trade-name which has become identified with particular product or business will be protected, though descriptive.**

When a person has adopted, and for a long time used, a word or words, descriptive or otherwise, as a trade-name, until it has acquired a new and secondary meaning as a designation of a particular product or business, as belonging to that person, the courts will protect him in his rights in the trade-name.

**4. Trade-marks and trade-names and unfair competition ⟨⇒⟩70(1)—Trade-name entitled to protection from use by another likely to deceive public.**

An unfair use of a trade-name by another may exist, though the exact name is not used, or though only a part of it is used, and if enough of it is used, so that there is a likelihood that the public will be deceived and no sufficient steps are taken to prevent the deception, the first user is entitled to protection.

**5. Trade-marks and trade-names and unfair competition ⟨⇒⟩70(1)—Product so dressed that reasonable examination will disclose its origin will not support claim of unfair competition.**

One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the source of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it has fairly discharged his duty to the public and competitors, and is guiltless of that deceit which is an indispensable element of unfair competition.

**6. Trade-marks and trade-names and unfair competition ⟨⇒⟩70(1)—In determining unfair use of another's trade-name on label or carton, whole must be inspected.**

In determining whether a complainant's rights in his trade-name have been invaded by defendant's use of the same or a similar name, the surest and most satisfactory test is inspection, and where the use of the trade-name is on labels or cartons they must be inspected as a whole, and not merely for points of resemblance.

**7. Trade-marks and trade-names and unfair competition ⟨⇒⟩70(1)—Inspection of dress of defendant's product held not to show unfair use of part of complainant's trade-name.**

Bottles, labels, and cartons containing defendant's medical preparation *held* so clearly distinguishable from those of complainant as not to show an unfair use of a part of complainant's trade-name.

Appeal from the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Suit in equity by the Richmond Remedies Company against the Dr. Miles Medical Company. Decree for defendant, and complainant appeals. Affirmed.

William K. Amick, of St. Joseph, Mo. (Ashley G. Knight, of Trenton, Mo., on the brief), for appellant.

Edward S. Rogers, of Chicago, Ill. (W. C. Michaels, of Kansas City, Mo., on the brief), for appellee.

Before BOOTH, Circuit Judge, and PHILLIPS and SANBORN, District Judges.

BOOTH, Circuit Judge. Appellant, plaintiff below, brought suit for an injunction and damages on account of an alleged infringement of its trade-mark; also on account of alleged unfair competition in connection with the use of its trade-name. The suit was originally commenced in the state court of Jackson county, Mo., but was removed to the federal court on the ground of diversity of citizenship and the requisite amount involved.

Motion was made to dismiss the bill, on the ground that it failed to state facts sufficient to constitute a valid cause of action in equity against defendant. The motion was heard on the bill and the exhibits referred to therein. The motion was sustained, and, plaintiff refusing to further plead, decree was entered dismissing the bill.

The bill is somewhat inartistically drawn, but the substance of its allegations is as follows: That in 1873 S. A. Richmond, living in St. Joseph, Mo., began the manufacture and sale of a medicine for diseases of the nerves and nervous system, called "Samaritan Nervine." The manufacture and sale has been continued to the present time by Richmond or his successors, including plaintiff. That on March 26, 1878, Richmond registered in the Patent Office at Washington, D. C., the words "Samaritan Nervine" as trade-mark, in connection with the figure of a man falling backward in a fit; that since 1873 said Richmond and his successors have used the words "Samaritan Nervine" as a trade-mark in connection with the medicine, and have carried on a successful business; that Richmond and his successors, including plaintiff, have advertised said medicine by having the words "Samaritan Nervine" printed in large capital letters on two sides of the carton containing the bottle in which the medicine is put up, and by having a label containing the same

words pasted on the bottle, and by having the word "Samaritan" blown in the glass bottle on one side and the word "Nervine" blown in on the opposite side; that plaintiff's medicine has been and is known by the public, not only by the name "Samaritan Nervine," but also by the name "Nervine" alone; that by long use the word "Nervine" acquired in the minds of the public a secondary meaning, viz. the particular medicine made and sold by plaintiff; that about the year 1919 the defendant began to infringe plaintiff's trademark, and was guilty of unfair competition in invading plaintiff's rights under its tradename; that defendant made and sold a medicine which it called "Nervine," for diseases of the nerves and nervous system; that defendant used the word "Nervine" in large capital letters on the cartons containing the bottles in which the medicine was put up;

that defendant also pasted on the bottles a label containing the same word, and had the same word blown into the bottles; that defendant on April 26, 1921, registered in the United States Patent Office the word "Nervine" as a trade-mark, but that later, upon the complaint of plaintiff, this was canceled; that these acts of defendant constitute an invasion and violation of the rights of plaintiff in its trade-mark and trade-name; that by these acts of defendant consumers are misled and induced to buy defendant's product, "Nervine," thinking they are buying plaintiff's "Samaritan Nervine"; that defendant's product is inferior to plaintiff's product; and that plaintiff has sustained loss and damage by reason of the acts of defendant.

The cartons of plaintiff and defendant respectively, referred to in the bill, are here reproduced:

(Printed matter omitted)

(Printed matter omitted)

Liberally construed, the bill attempts to set up a cause of action for infringement of a trade-mark; also a cause of action for unfair competition in connection with a trade-name. The main question to be determined is whether the allegations of the bill are sufficient for either purpose.

### As to the Trade-Mark.

[1] The word "Nervine" is a descriptive word, meaning a nerve tonic, or a remedy for disorders of the nerves. The court will take judicial notice that it has been in use for more than a century and a half. It is a part of the public heritage. Being a descriptive word, it cannot be appropriated as a trade-mark at common law, either alone or in combination with the word "Samaritan." Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 31 S. Ct. 456, 55 L. Ed. 536; Warner & Co. v. Lilly & Co., 265 U. S. 526, 44 S. Ct. 615, 68 L. Ed. 1161; Brennan v. Emery-Bird-Thayer, etc., Co., 108 F. 624 (C. C. A. 8); Computing Scale Co. v. Standard Co. (C.

C. A.) 118 F. 965. Nor can it be registered under the federal statute relating to trade-marks, unless it meets the requirement of the fourth proviso of section 5 (b) of the Act of February 20, 1905 (33 Stat. 724 [Comp. St. § 9490]). Thaddeus Davids Co. v. Davids, 233 U. S. 461, 470, 34 S. Ct. 648, 58 L. Ed. 1046, Ann. Cas. 1915B, 322; Planten v. Gedney (C. C. A.) 224 F. 382, 385; Henderson v. Peter Henderson & Co. (C. C. A.) 9 F. (2d) 787; Pulitzer Pub. Co. v. Houston Printing Co. (C. C. A.) 11 F.(2d) 834. No registration under that act is alleged by the bill in the case at bar.

[2] The registration of the trade-mark set forth in the bill gave plaintiff no rights in the words "Nervine" or "Samaritan Nervine" as a trade-mark, for two reasons: First, because the trade-mark registered did not contain either of the words. The trade-mark registered consisted solely of a picture of a man falling in an epileptic fit; his hat and cane dropping to the ground. This is apparent, both from the exhibit attached to the complaint and al-

so from the opinion of the court in Richmond Nervine Co. v. Richmond, 159 U. S. 293, 16 S. Ct. 30, 40 L. Ed. 155. Second, the act of Congress under which the registration was made (Act July 8, 1870 [16 Stat. 198]) was unconstitutional. Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550. The allegations of the bill were therefore legally insufficient to show that plaintiff had a trade-mark in the word "Nervine," or in the words "Samaritan Nervine." It follows from the foregoing that no cause of action was stated for the infringement of a trade-mark.

## As to the Trade-Name.

[3] Though a descriptive word cannot (unless within the proviso of the statute as above noted) become the subject of a trade-mark, nevertheless, when a person has adopted and for a long time used a word or words, descriptive or otherwise, as a trade-name until it has acquired a new or secondary meaning, viz. a designation of a particular product or business as belonging to that person, the courts will protect him in his rights in relation to the trade-name. This is known as the doctrine of secondary meaning. Elgin, etc., Co. v. Ill., etc., Co., 179 U. S. 665, 673, 674, 21 S. Ct. 270, 45 L. Ed. 365; Standard Paint Co. v. Trinidad Asphalt Co., supra; Pillsbury-Washburn Co. v. Eagle (C. C. A.) 86 F. 608, 41 L. R. A. 162; Computing Scale Co. v. Standard Co., supra; Vacuum Oil Co. v. Climax Refining Co. (C. C. A.) 120 F. 254; G. W. Cole Co. v. American Cement, etc., Co. (C. C. A.) 130 F. 703; G. & C. Merriam Co. v. Saalfield (C. C. A.) 190 F. 927; Rubber, etc., Co. v. F. W. Devoe, etc., Co. (D. C.) 233 F. 150; Industrial, etc., Corp. v. Community Fin. Co. (C. C. A.) 294 F. 870; Chas. Broadway Rouss, Inc., v. Winchester Co. (C. C. A.) 300 F. 706; Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7, 137 S. W. 784, 34 L. R. A. (N. S.) 1040; Reddaway v. Banham & Co., 65 L. J. Rep. (N. S.) Q. B. Div. 381.

Hopkins in his work on Trade-Marks, Trade-Names, and Unfair Competition (4th Ed.) p. 13, suggests the following definition of a trade-name:

"A trade-name is a word or phrase by which a business enterprise or business location or specific articles of merchandise from a specific source are known to the public, and which when applied to merchandise is generic or descriptive and hence not susceptible of appropriation as a technical trade-mark."

In Vacuum Oil Co. v. Climax Refining Co., supra, the court said:

"That a descriptive word or sign or symbol, descriptive from popular use in a descriptive sense, may acquire a secondary significance denoting origin or ownership, is true. But this secondary significance is not protected as a trade-mark, for a descriptive word is not the subject of a valid trade-mark; the only office of a trade-mark being to indicate origin or ownership. When a descriptive or geographical word or symbol comes by adoption to have a secondary meaning denoting origin, its use in this secondary sense may be restrained, if it amounts to unfair competition. In such case, if the use of it by another be for the purpose of palming off the goods of one as and for the goods of another, a court of equity will interfere for the purpose of preventing such a fraud."

[4] An unfair use of the trade-name may exist, though the exact name is not used, or though only part of the trade-name is used. If enough of the trade-name is used by the "later comer," so that there is a likelihood that the public will be deceived, and no sufficient steps taken to prevent the deception, the "earlier comer" is entitled to protection. The rules and principles governing the rights of the owner of a trade-name are those governing unfair competition. The fundamental maxim is that a man may not palm off on the public his wares as being the wares of another. If the trade-name consists of a descriptive word, no monopoly of the right to use the same can be acquired. This is but a corollary of the proposition that a descriptive word cannot be the subject of a trade-mark. G. & C. Merriam Co. v. Saalfield (C. C. A.) 198 F. 369. Others may use the same or similar descriptive word in connection with their own wares, provided they take proper steps to prevent the public being deceived. Standard Paint Co. v. Trinidad Asphalt Co., supra; Vacuum Oil Co. v. Climax Refining Co., supra; Allen B. Wrisley Co. v. Iowa Soap Co., 122 F. 796 (C. C. A. 8); Heide v. Wallace & Co. (C. C. A.) 135 F. 346; Trinidad Asphalt Co. v. Standard Paint Co., 163 F. 977 (C. C. A. 8); Walter Baker & Co. v. Gray, 192 F. 921, 52 L. R. A. (N. S.) 889 (C. C. A. 8); G. & C. Merriam Co. v. Saalfield (C. C. A.) 198 F. 369; S. R. Feil Co. v. Jno. E. Robbins Co. (C. C. A.) 220 F. 650.

[5] In Trinidad Asphalt Co. v. Standard Paint Co., supra, this court said:

"But all must submit to the competition which comes alone from the fair and truthful employment of generic names and terms descriptive of the qualities and characteristics of articles of trade and commerce, unaccompanied by other acts designed to induce confusion and error in the mind of the public.

* * * It would be a result unsustained by reason or authority if one, after vainly attempting through a trade-mark to secure a monopoly of a generic or descriptive word, should nevertheless be granted one by decree of a court, applying the doctrine of unfair competition to those who simply used the word in the appropriate naming or description of their goods, but in other respects plainly distinguished them from the goods of their competitor. * * * Unfair competition cannot arise from the mere use of words belonging to the public, accompanied by a fair and truthful statement of the ownership and source of manufacture."

In the case of Allen B. Wrisley Co. v. Iowa Soap Co., supra, this court, speaking by Judge Sanborn, said:

"The duty is imposed upon every manufacturer or vendor to so distinguish the article he makes or the goods he sells from those of his rival that neither its name nor its dress will probably deceive the public or mislead the common buyer. He is not, however, required to insure to the negligent or the indifferent a knowledge of the manufacture or the ownership of the articles he presents. His competitor has no better right to a monopoly of the trade of the careless and indifferent than he has, and any rule of law which would insure it to either would foster a competition as unfair and unjust as that promoted by the sale of the goods of one manufacturer as those of another. One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the sources of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition."

[6] In determining whether a plaintiff's rights in his trade-name have been invaded by defendant's use of the same or a similar name, the surest and most satisfactory test is inspection, and where the use of the trade-name is on labels or cartons they must be inspected as a whole, and not merely for points of resemblance. P. Lorillard Co. v. Peper, 86 F. 956, 960 (C. C. A. 8); Postum Cer. Co. v. American, etc., Co., 119 F. 848 (C. C. A.); G. W. Cole Co. v. American Cement, etc., Co., supra; Viavi Co. v. Vimedia Co., 245 F. 289 (C. C. A. 8); Haller Baking Co. v. Ward Baking Co., 295 F. 681 (C. C. A.).

In view of the foregoing principles, we assume that plaintiff has, as alleged in the bill, a valid trade-name in the words "Samaritan Nervine" and in the word "Nervine."

The remaining inquiry is: Does the bill by its allegations show an invasion of plaintiff's rights by the defendant?

[7] The bottles containing the medicine of plaintiff and defendant, respectively, the labels on the bottles, and the cartons containing the bottles, were all made part of the bill by reference and were before the trial court. They are also before this court. They are physical items, which characterize, qualify, and limit the allegations of the bill. They constitute the concrete embodiment of those allegations.

The bottles are dissimilar. They differ in shape and appearance. Plaintiff's bottles show blown into the glass the words "Samaritan Nervine," also its present trade-mark, consisting of a likeness of Dr. Richmond, together with his name and the words "Trade Mark." Defendant's bottles show blown into the glass the words "Dr. Miles Medical Co."

The labels on the bottles are entirely dissimilar. They differ both in color and contents. Plaintiff's label has at the top a picture of Dr. Richmond, with the words "Trade Mark"; also the words "Samaritan Nervine." Next, in smaller type, are directions for using the medicine. Then follows the statement:

Manufactured only by
Richmond Remedies Company
St. Joseph, Mo., U. S. A.
Successors to
Dr. S. A. Richmond Nervine Co.

The labels on defendant's bottles have at the top the words "Dr. Miles' Nervine." Next follows the same double face picture which is shown on the carton above. Then follows the statement:

Prepared at the
Dr. Miles Medical Co.'s
Laboratory,
Elkhart, Indiana.

The cartons have been reproduced above. Without going seriatim through the points of similarity and dissimilarity, it is sufficient to say that they differ materially from each other in form, color, appearance, and contents, as the most casual inspection will show. The words of Mr. Justice Brewer in the case of P. Lorillard Co. v. Peper, supra, are quite apposite here:

"The difference is such that the eye will take it in at a moment's glance. Summing it all up, while there are certain minor points of resemblance which have been forcibly urged upon our attention by the counsel for plaintiff, yet, looking at the two packages with their labels, taking the tout ensemble, it ap-

pears to us clear that they are so essentially different that no one of ordinary intelligence, desiring to buy the one kind of tobacco, would be misled into buying a package of the other. * * * We cannot surrender our own judgment in this matter because others may be of a different opinion, or because it happens, in isolated instances, that some purchaser was so careless as not to detect the differences. It may (well be that, where many sales were made, some individuals, not particularly attentive, may have purchased the defendant's supposing they were purchasing the plaintiff's package. Such things will happen in the ordinary course of business, no matter how great the differences; and the fact that they do happen, while it is not to be ignored, is not to outweigh the evidence which comes from a personal inspection of the packages and labels."

Considering the allegations of the bill, together with the exhibits, we are of the opinion that no cause of action was stated for unfair competition in connection with the trade-name. The bill, stating no cause of action in equity, was properly dismissed.

Decree affirmed.