**DIXI–COLA LABORATORIES, Inc., et al.**
**v. COCA–COLA CO.**
No. 4672.

Circuit Court of Appeals, Fourth Circuit.
Jan. 11, 1941.

See, also, 30 F.Supp. 275.

Joseph S. Mead, of Birmingham, Ala., and W. Hamilton Whiteford, of Baltimore, Md. (Mead & Moebes, of Birmingham, Ala., and Due, Nickerson & Whiteford, of Baltimore, Md., on the brief), for appellants.

Arthur T. Vanderbilt, of Newark, N. J. (Mullikin, Stockbridge & Waters, of Baltimore, Md., Herman Shulman, Milton Handler, and Benjamin Algase, all of New York City, Theodore C. Waters and Hershey, Donaldson, Williams & Stanley, all of Baltimore, Md., Willis Battle, of Columbus, Ga., Ellis W. Leavenworth, of New York City, and Roger B. Williams, of Baltimore, Md., on the brief), for Pepsi-Cola Co., Life Savers Corporation, and Nehi Corporation, as amici curiae.

Hilary W. Gans, of Baltimore, Md., and Harry D. Nims, of New York City (Brown & Brune and Charles Ruzicka, all of Baltimore, Md., Robert B. Troutman, of Atlanta, Ga., and Percy E. Williamson, Jr., of New York City, on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The Coca-Cola Company, a Delaware corporation, is undoubtedly entitled to relief in this case of trade-mark infringement and unfair competition. Fraudulent conduct on the part of the Dixi-Cola Laboratories, Inc., a Maryland corporation, and certain individuals resident in Maryland and trading as Marbert's, Inc., and Apola Extract and Syrup Corporation, has been established. The only question seriously disputed, albeit an important one, is the extent of the relief to which the plaintiff is entitled.

The plaintiff is the owner of the trade-mark "Coca-Cola" for a syrup to be used with carbonated water as a beverage. The defendants make and sell a concentrate and a syrup to be used in the production of a similar beverage under the names, MarBert the Distinctive Cola and Dixi-Cola. The defendants do not use the word "coca"; but they claim the right to use the word "cola" in the combinations mentioned. The evidence shows that they have also used other terms, such as Apola Cola and Lola-Kola, but as to them they now make no defense. The plaintiff concedes that the names Dixi-Cola and Mar-Bert the Distinctive Cola are not so similar to the name Coca-Cola, that a purchaser of the beverage known as Dixi-Cola or MarBert the Distinctive Cola would be led to believe that he was buying the beverage Coca-Cola, but the plaintiff nevertheless-charges infringement on the ground that the use of the word "cola" in defendants'

trade-marks or trade-names leads the public to believe that their products originate with the plaintiff.

The decree of the District Court sustains this contention, forbidding the defendants to continue the use of names containing the word "cola", or to use Coca-Cola or any other name which includes either the word "coca" or "cola". The defendants are also enjoined from the performance of various acts designed to promote the passing off of their product as that of the plaintiff, and are specifically prohibited from giving to their merchandise, not sold to consumers in bottles, a color resembling the well known dark brown color of the Coca-Cola beverage, when defendants know, or in the exercise of reasonable care should know, that the purchaser does not intend to dispense the goods to customers in bottles, or intends to use bottles with some deceiving element, enabling the goods to be passed off as the plaintiff's product. The defendants, however, are given permission, under certain distinguishing safeguards, to state on their containers and labels, or in advertisements, if it should be a fact, that their products contain an extract of coca leaves or cola nuts.

The broad claim of the plaintiff to the exclusive use of the word "cola" in a trade-mark or trade-name is based upon the contention that Coca-Cola is a technical common-law trade-mark, adopted as a fanciful and arbitrary word by the first producer of the beverage in 1886. The plaintiff also relies on five registrations of the mark in the United States Patent Office, one under the Act of March 3, 1881, 21 Stat. 502, and four under the Act of February 20, 1905, 33 Stat. 724, 15 U.S.C.A. § 81 et seq. The District Judge concluded that these registrations were valid, but it is not necessary for us to decide the point here for, as the judge also held, the substantive rights under a trademark are not dependent upon or affected by registration, and its secondary, as distinguished from its primary significance, is still open to question. Thaddeus Davids Co. v. Davids Mfg. Co., 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046, Ann.Cas.1915B, 322; Trade-Mark Cases, 1879, 100 U.S. 82, 92, 25 L.Ed. 550; American Trading Co. v. Heacock Co., 1932, 285 U.S. 247, 52 S.Ct. 387, 76 L.Ed. 740; Anheuser-Busch v. Cohen, D.C.Md.1930, 37 F.2d 393, 396; Beckwith's Estate, Inc. v. Com-

354

missioner, 1920, 252 U.S. 538, 543, 40 S. Ct. 414, 64 L.Ed. 705; American Steel Foundries v. Robertson, 1926, 269 U.S. 372, 381, 46 S.Ct. 160, 70 L.Ed. 317; United Drug Co. v. Rectanus Co., 1918, 248 U.S. 90, 99, 39 S.Ct. 48, 63 L.Ed. 141.

■ A vigorous contest has arisen in this case as to whether the name Coca-Cola is in reality a technical trade-mark, entitled to the widest protection, or is a descriptive name which through long years of use and extensive advertisement has acquired a secondary significance. So far as the validity of the trade-mark and the right of the plaintiff to prevent its use as a whole by any competitor are concerned, the issue is unimportant. It was held in Coca-Cola Co. v. Koke Co., 1920, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, that "whatever may have been its original weakness, the mark for years has acquired a secondary significance and has indicated the plaintiff's product alone"; and it was held by this court the next year in Coca-Cola Co. v. Old Dominion Beverage Corp., 4 Cir., 271 F. 600, 601, certiorari denied 256 U.S. 703, 41 S.Ct. 624, 65 L.Ed. 1179 that as the plaintiff's trade-mark had been duly registered under the ten-year proviso of the Act of February 20, 1905, it is "immaterial that it may once have been descriptive or that to a degree it may be so still". See, also, Coca-Cola Co. v. Gay-Ola Co., 6 Cir., 200 F. 720; Id., 6 Cir., 211 F. 942; Nashville Syrup Co. v. Coca Cola Co., 6 Cir., 215 F. 527, Ann.Cas.1915 B, 358; Coca-Cola Co. v. Bennett, 8 Cir., 238 F. 513; Coca-Cola Co. v. Chero-Cola Co., 51 App.D.C. 27, 273 F. 755; Steinreich v. Coca-Cola Co., Cust. & Pat.App., 67 F.2d 498.

The decisions in trade-mark cases seem to show that some difference exists between the protection given to trade-marks and that given to trade-names, using these terms in the significance in which they are employed in the Restatement of Torts, §§ 715, 716, to indicate, respectively, arbitrary marks or coined words adopted as technical trade marks, and descriptive marks which have acquired a secondary significance. In some cases it is said that a descriptive name which has acquired a secondary significance may be used by a competitor to designate his own product; provided that in doing so he unmistakably distinguishes it from that of the prior user of the name, while in other cases it is said that the use of such a word to denominate the competitor's product should be enjoined. Compare the original opinion in Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 40 A.L.R. 424, with the opinion in the same case on rehearing in 29 F.2d 474. See, also, Elgin Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Thaddeus Davids Co. v. Davids Mfg. Co., 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046, Ann.Cas.1915B, 322; Fawcett Publications v. Popular Mechanics Co., 3 Cir., 80 F.2d 194; Richmond Remedies Co. v. Dr. Miles Medical Co., 8 Cir., 16 F.2d 598; Vacuum Oil Co. v. Climax Refining Co., 6 Cir., 120 F. 254; Trinidad Asphalt Co. v. Standard Paint Co., 8 Cir., 163 F. 977, affirmed 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536. In reality, there is no important difference between a trade-name and a trade-mark with respect to the protection afforded by the courts to the exclusive right of the owner to use it to denominate his goods. See, Restatement of Torts, § 717 and comment (a); Handler and Pickett on Trade Marks and Trade Names, 30 Col.L.Rev. 168.

It is certainly beyond dispute that the word "Coca-Cola" is the exclusive property of the Coca-Cola Company. The evidence in the pending case shows that what was said of the name in Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, and Coca-Cola Co. v. Old Dominion Beverage Corp., supra, is equally true today. There has been no let-up in the popular demand for the drink or in the extent of its advertising. On the contrary, both have greatly increased. In 1920 the gallons of syrup sold were 18,656,445 and the advertising expense $2,330,710.40, while in 1938 the gallons sold were 48,508,414, and the advertising expense $7,122,863.31. No one else can lawfully use the word "Coca-Cola" for a trade-mark, even though it originally may have been a descriptive name.

The plaintiff, however, is not content with this measure of protection. It insists in addition that no one shall use the word "cola" in a trade-mark, even in connection with a prefix that prevents all confusion with the name Coca-Cola. The reason given is that the word is so closely associated with Coca-Cola in the public mind that any drink, bearing the word as part of its name, will be thought to proceed from the same source. Forty-one witnesses from Baltimore, Springfield and Birmingham testified that when they saw goods labeled by a name containing the

suffix "cola", they were led to believe, not that the goods were Coca-Cola, but that they originated with the Coca-Cola Company. Hence, it is said, the defendants have appropriated the result of the plaintiff's efforts and expenditures, and imperiled the reputation of the Coca-Cola Company and its product.

Confusion of origin, as well as confusion of goods, from the use of the same trade-mark, may constitute infringement, especially when the name has a fanciful and arbitrary character. See the decision of this court in Arrow Distilleries, Inc. v. Globe Brewing Co., 4 Cir., 117 F.2d 347, decided January 6, 1941. We must, therefore, consider the defense now set up to this phase of the plaintiff's case that the word "cola" is a descriptive and generic term, open to all the world, which may be lawfully used as part of a trade-mark by competitors so long as the whole trade-mark is not confusingly similar to Coca-Cola.

There are many cases which hold that it is not infringement for a trader to use as part of his trade-name to designate his product a descriptive or generic word which has already been adopted by another, provided that the competing marks, taken as a whole, are clearly distinguishable. Thus "Sal-Vet" was held not infringed by "Sal Tone", since the word "Sal", meaning salt, was descriptive of the principal ingredient of both products, and no ordinary purchaser would confuse one of the complete names with the other. S. R. Feil Co. v. John E. Robbins Co., 7 Cir., 220 F. 650.[1]

In the light of these decisions, it is important to inquire whether or not the word "cola" has a descriptive significance apart from its use in the trade-mark Coca-Cola, and has become a generic term, generally used to indicate a class of beverage. The answer is to be found, we believe, in scientific and popular literature, in the discussions of Coca-Cola cases by the courts, and the attitude of the Coca-Cola Company itself in the conduct of its business. The beverage was devised and the name Coca-Cola was adopted by John S. Pemberton in Atlanta in 1886. The product was sold under a label registered in the Patent Office, which advertised Coca-Cola syrup as an extract for carbonated beverages possessing a peculiar flavor and the tonic and nerve stimulant qualities of the coca plant and cola nuts. Both of these substances were well known at that time. The word "cola" was recognized as the name of a tree native to Africa, which bears the small brown "cola nut" that was introduced in England in 1865 and later in the United States. Prior to 1886 the stimulant qualities of the cola nut were frequently referred to in pharmaceutical and scientific publications and periodicals, and it was suggested that it could be used to make a beverage that would successfully compete with tea and coffee as a refreshing and invigorating drink.[2]

These facts led to the contention in the court below that at best the word Coca-Cola, taken as a whole, is a descriptive name, entitled to protection only because it has acquired a secondary significance. But the contention was rejected. It was

[1] See, also, Graf Bros., Inc. v. Marks, D.C.E.D.N.Y.1929, 41 F.2d 167; Caron Corp. v. Maison Jeurelle-Seventeen, Inc., D.C.S.D.N.Y.1938, 26 F.Supp. 560; Colburn v. Puritan Mills, 7 Cir., 1939, 108 F.2d 377; (the court regarded the plaintiff's mark as descriptive but did not rest its discussion on this ground); Thomas Kerfoot & Co. v. Louis K. Liggett Co., 1 Cir., 1933, 67 F.2d 214; Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co., 2 Cir., 1927, 20 F.2d 298; Valvoline Oil Co. v. Havoline Oil Co., D.C.S.D.N.Y.1913, 211 F. 189; Crowell Pub. Co. v. Italian Monthly Co., Inc., D.C.S.D.N.Y.1928, 28 F.2d 613; Social Register Ass'n v. Murphy, C.C.D.R.I.1904, 128 F. 116; Glenmore Distilleries Co. v. National D. Prod. Corp., D.C.E.D.Va., 23 F.Supp. 928, affirmed, 4 Cir., 101 F.2d 479; Pepsi-Cola Co. v. Krause Bottling Co., 4 Cir., 92 F.2d 272.

[2] Lindley—The Treasury of Botany, Longmans, Green & Co., 1874, pp. 311, 312.

The Dispensatory of the United States of America, 13th Ed., pp. 1700–1701.

American Journal of Pharmacy, January, 1883, pp. 27–28.

"The Kola Nut", The Druggists' Circular and Chemical Gazette, February 1883, p. 19.

"The Kola Nut", Journal of The Chemical Society, 1884, pp. 863, 864.

"A New Idea", June-July, 1884, p. 327.

"Notes on Kola Nut", The American Druggist, July 1885, pp. 133, 134.

"Kola and Kola Paste", The American Druggist, August, 1886, pp. 155, 156.

said that while relatively small amounts of coca and cola extracts are found in the drink, the basic ingredients are sugar, phosphoric acid and a small amount of caffeine; and also that the words comprising the mark were so little known to the general public when adopted that they did not suggest at that time that the beverage was made from coca leaves or cola nuts. Hence it was decided that the name is not clearly descriptive of the product, but should be considered a coined word with all the characteristics of a technical trade mark. Other courts have reached the same conclusion. See, Coca-Cola Co. of Canada, Ltd. v. Pepsi-Cola Co. of Canada, Ltd., 1938, 4 D.L.R. 161. (Reversed by the Supreme Court of Canada, 1940, 1 D.L.R. 161). Nashville Syrup Co. v. Coca Cola Co., 6 Cir., 215 F. 527, Ann.Cas.1915 B, 358.

This view, however, has not always been maintained by the Coca-Cola Company in the conduct of its business, or by the courts in the never-ceasing litigation provoked by the extraordinary popularity of the product. Thus we find in 1901, in a suit for infringement against John B. Daniel in the Fulton Superior Court of Fulton County, Georgia, that the president of the Coca-Cola Company made affidavit to a bill of complaint wherein it was alleged that the company had been engaged for more than five years in the manufacture and sale of a trade-marked syrup or article, known as Coca-Cola, "the name in large measure being descriptive of the character of the article." Coca-Cola Co. v. John B. Daniel, No. 8577, Spring Term, 1901.

In 1905, the Coca-Cola Company indicated that the mark was descriptive in character by applying, through its president, for registration in the Patent Office under the ten year proviso of § 5 of the Act of February 20, 1905, 15 U.S.C.A. § 85, which permits the registration of a descriptive mark by one who has made actual and exclusive use thereof for ten years next preceding the approval of the act.

In 1912, in Coca-Cola Company v. Deacon Brown Bottling Co., D.C. N.D. Ala., 200 F. 105, it was said that the right of complainant to the use of the words Coca-Cola as a technical trade-mark was doubtful, "in view of the fact that the words are admittedly suggestive, and probably merely descriptive of the constituents of the beverage, and not subject to be appropriated as a trade-mark"; but the plaintiff was held entitled to an injunction because the mark had acquired a secondary meaning and had been registered under the ten-year clause of the Act of 1905.

Again in 1912, in Coca Cola Co. v. Williamsburgh Stopper Co.,[3] D.C.S.D.N.Y., Judge Hough said: " 'Cola' is admittedly a descriptive word, in which complainant is entitled to no special or exclusive right. Nevertheless affidavits submitted are fully persuasive to the effect that 'soft drinks', to which the word 'cola' can properly be applied, owe if not their introduction, certainly their popularity, wholly to the long continued efforts of complainant."

In 1916, in United States v. Forty Barrels and Twenty Kegs of Coca Cola, 241 U.S. 265, 285, 36 S.Ct. 573, 60 L.Ed. 995, Ann.Cas.1917C, 487, the court considered a change under the Pure Food and Drug Act of June 30, 1906, 34 Stat. 768, 21 U.S. C.A. § 1 et seq., that Coca-Cola was misbranded in that it contained no coca and little, if any, cola. The court rejected the defense that the combination of the two names constituted a distinctive name, and held that it was a question of fact whether or not the name was primarily descriptive of a compound with coca and cola ingredients. The lower court in an opinion, 6 Cir., 215 F. 535, filed the same day as its opinion in Nashville Syrup Co. v. Coca Cola Co., 6 Cir., 215 F. 527, Ann. Cas.1915B, 358, had said that there could be no misbranding because the public generally was not familiar with the substances described in the name of the beverage. But the Supreme Court repudiated this argument, saying (page 288 of 241 U.S., page 581 of 36 S.Ct., 60 L.Ed. 995, Ann.Cas. 1917C, 487): "Nor would it be controlling that at the time of the adoption of the name the coca plant was known only to foreigners and scientists; for if the name had appropriate reference to that plant and to substances derived therefrom, its use would primarily be taken in that sense by those who did know or who took pains to inform themselves of its meaning. Mere ignorance on the part of others as to the nature of the composition would not change the descriptive character of the designation. The same conclusion would be reached if the single

---

[3] No opinion for publication.

name 'Cola' had been used as the name of the product, and it were found that in fact the name imported that the product was obtained from the cola nut. The name would not be the distinctive name of a product not so derived until in usage it achieved that secondary significance." Other courts have also denied the right to the exclusive use of terms known to investigators, but unknown to the public at large. See, Searle & Hereth Co. v. Warner, 7 Cir., 112 F. 674; Thermogene Co. v. Thermozine Co., 2 Cir., 234 F. 69; Richmond Remedies Co. v. Dr. Miles Med. Co., 8 Cir., 16 F.2d 598; In re Richfield Oil Co., Cust. &.Pat.App., 88 F.2d 499.

The decision of the Supreme Court in Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, has already been mentioned. The court rejected the charge that the right to protection against infringement because of misrepresentations implied by the name that the product contained cocaine, which had formerly been used in small amounts, but had been eliminated after the passage of the Food and Drug Act. The court said (pages 146, 147 of 254 U.S., page 114 of 41 S.Ct., 65 L.Ed. 189): " * * * We are dealing here with a popular drink not with a medicine, and although what has been said might suggest that its attraction lay in producing the expectation of a toxic effect the facts point to a different conclusion. Since 1900 the sales have increased at a very great rate corresponding to a like increase in advertising. The name now characterizes a beverage to be had at almost any soda fountain. It means a single thing coming from a single source, and well known to the community. It hardly would be too much to say that the drink characterizes the name as much as the name the drink. In other words 'Coca-Cola' probably means to most persons the plaintiff's familiar product to be had everywhere rather than a compound of particular substances. Although the fact did not appear in United States v. [Forty Barrels and Twenty Kegs of] Coca Cola, 241 U.S. 265, 289, 36 S.Ct. 573, 60 L.Ed. 995, Ann.Cas.1917C, 487, we see no reason to doubt that, as we have said, it has acquired a secondary meaning in which perhaps the product is more emphasized than the producer but to which the producer is entitled. The coca leaves and whatever of cola nut is employed may be used to justify the continuance of the name or they may affect the flavor as

the plaintiff contends, but before this suit was brought the plaintiff had advertised to the public that it must not expect and would not find cocaine, and had eliminated every thing tending to suggest cocaine effects except the name and the picture of the leaves and nuts, which probably conveyed little or nothing to most who saw it. It appears to us that it would be going too far to deny the plaintiff relief against a palpable fraud because possibly here and there an ignorant person might call for the drink with the hope for incipient cocaine intoxication. The plaintiff's position must be judged by the facts as they were when the suit was begun, not by the facts of a different condition and an earlier time."

Shortly thereafter came the decision of this court in Coca-Cola Co. v. Old Dominion Beverage Corp., 4 Cir., 271 F. 600, certiorari denied 256 U.S. 703, 41 S.Ct. 624, 65 L.Ed. 1179, in which it was held immaterial that the mark was descriptive since it had been duly registered under the ten-year clause of the Act of 1905.

It will be perceived that in some of these earlier cases the Coca Cola Company, in answer to the charges made against its trade-name, successfully maintained the position that the name of the beverage was not deceptive, but was actually justified by the ingredients, while in the present case the company is endeavoring to show that the name is purely arbitrary and fanciful, and does not truly describe the nature of its product.

It must be concluded, we think, from this history that the word "Coca-Cola", taken as a whole, is in some sense descriptive of the drink which it designates. It is true that the name identifies the goods of the plaintiff, but it has also come to characterize them. This process has been hastened by the fact that the combination of extract of coca leaves and extract of cola nuts employed by Pemberton was new, and it gave to the product a new and distinctive flavor for which there was no other name than that which he employed. Hence the drink came to be known to the public by this name in much the same fashion as other soft drinks are named for a small quantity of flavoring ingredient rather than the large quantities of sugar and water that mainly compose them. The process was further stimulated by the great public response to the drink and the activities of numerous competi-

tors who speedily entered the field and were enabled lawfully to make the same or a similar beverage, since Coca-Cola was not covered by a patent.

The record is replete with references to the number of competing drinks in this class. The District Judge in his opinion, 31 F.Supp. 835, 839, said that "since Coca-Cola appeared, there has been a veritable flood of drinks of this type, as evidenced by the fact that there have been no less than 143 registrations in the United States Patent Office of names embodying the word 'cola' as a suffix". In 1907 the Supreme Court of Mississippi, in the case of Coca-Cola Co. v. Skillman, 91 Miss. 677, 44 So. 985, discussed a statute imposing a privilege tax on Coca-Cola, Celery-Cola, Afri-Cola, Hecks Cola, Cola-Beta, Colavin, Nervola, and Nervocola, or any similar or proprietary drinks. Some cola drinks have had a long and continuous history. Thus the record shows that Lime-Cola has been made for more than twenty years in the United States and that Pepsi-Cola has been in existence as a beverage for more than thirty-five years.

The adoption of the word "cola" to characterize a class of drinks thus came about very naturally, to some extent with the consent of the Coca-Cola Company, as we shall see, and to a greater extent because in the course of events it could not be prevented. It was attended by a vast increase after 1886 in the literature relating to the cola nut and its uses. Publications of various types recognized the fact that it could be used as an ingredient of a soft drink. Numerous references to the cola nut and to cola syrup and extract and their use in beverages, called cola drinks, appeared throughout the following years in dictionaries, encyclopedias, pharmaceutical magazines, trade journals and government publications.[4] During the same period the word was adopted as part of the trade name of a large number of competing beverages. The result is that today the phrase "cola drinks" indicates to the general public beverages which in taste and appearance resemble Coca-Cola.

The litigation that has ensued between the plaintiff and its numerous competitiors bears out this conclusion. The Coca-Cola Company itself has recognized the propriety of competitive trade-names containing the word "Cola" by consenting to a number of consent decrees in unreported cases as follows: Keen Kola in 1913, Espo-Cola in 1914, Gay-Ola in 1914 (6 Cir., 211 F. 942), Lime Cola and Afri-Cola in 1927.

The courts in a number of decisions have upheld the right of competitors to use the word "Cola" as part of a trade-name not confusingly similar in its entirety to Coca-Cola. Thus in 1912 it was held in Coca-Cola Co. v. Williamsburgh Stopper Co.,[5] that "cola" is a descriptive word to which the Coca-Cola Company had no especial or exclusive right, and that "cola" drinks were open to the world. In 1914, in Coca-Cola Co. v. Gay-Ola Co., 6 Cir., 211 F. 942, 945, the use of the words "The Improved Cola" was approved with certain precautions to prevent the continuance of deceptive practices by the owner. In 1930, the use of the words "Roxa Kola" was approved in Coca-Cola Co. v. Carlisle Bottling Works, 6 Cir., 43 F.2d 119, and in 1939, in Moxie Co. v. Noxie Kola Co. of New York, D.C.S.D. N.Y., 29 F.Supp. 167, it was said that cola is a purely descriptive term signifying a cola nut or an extract of it, and distinguishing any number of the cola drinks upon the market. 29 F.Supp. page 170.

The same result was reached in Pepsi-Cola Co. of Canada Ltd. v. The Coca-Cola Co. of Canada, Ltd., (1940) 1 D.L.R. 161,[6] where the Supreme Court of Canada ruled that the word "cola" could not be monopolized, and that the trade-mark "Pepsi-Cola" does not infringe "Coca-Cola". The Court said (pages 173, 175 of 1 D.L.R.):

"The only similarity between the two compound words here in question lies in the inclusion of the word 'cola' in both marks. The plaintiff does not, and of course could not, claim any proprietary right in the word 'cola' standing alone. None the less it is plain that the objec-

---

[4] Murray's A New English Dictionary, 1893, Vol. II, pp. 606, 607.
Webster's New International Dictionary, 2d Ed., Unabridged, 1939, p. 1374.
Encyclopaedia Americana, 1922.
Ernest E. Stanford, Economic Plants, 1934, pp. 527, 528.
"Composition and Food Value of Bot-

tled Soft Drinks", Yearbook of the U. S. Dept. of Agriculture, 1918, p. 116.
"Have A Coke", Consumer's Digest, Sept., 1939, pp. 37–39.

[5] No opinion for publication.

[6] Cross appeals in this case to the Privy Council have been allowed.

tion of the plaintiff really goes to the registration by any other person of the word 'cola' in any combination, for a soft drink. If such objection is allowed, then the plaintiff virtually becomes the possessor of an exclusive proprietary right in relation to the word 'cola', * * *".

"We cannot say by tests of sight and sound that the compound word 'Pepsi-Cola' bears so close a resemblance to 'Coca-Cola' as to be likely to cause confusion in the trade or among the purchasing public. The difference between the two compound words is apparent. If the sound test is applied, the difference is sharply accentuated; if the sight test is applied, the first word 'Pepsi', written in any form, at once distinguishes the compound words. The general impression on the mind of the ordinary person, we think, made by sight and sound of the two marks would be one of contrast, rather than of similarity."

It must not be supposed that the Coca-Cola Company has not fought vigorously to protect its valuable right from invasion. Suits against competitors have averaged one a week during the last thirty years. Many of these competitors have been guilty of fraud and unfair competition, and all of them, it is safe to say, have sought to participate in the profits which experience had shown could be derived from making a drink like Coca-Cola. Generally competitors have used the word "cola" as part of the corporate name, joined with a prefix, by which it might be distinguished from Coca-Cola. As evidence of its efforts to suppress unlawful competition, the plaintiff lists twenty-nine decrees by United States District Courts in unreported cases enjoining the use by a competitor of the word "cola" alone. Twenty-three of these decrees were entered with consent and three upon the default of the defendant. The use of the word "cola" as part of a trade-name, such as Apola Cola, King Cola, Keen-Cola, etc., has also been enjoined by consent decrees in unreported cases. The following reported cases also resulted in decrees of infringement: "Fletcher's Coca Cola", Nashville Syrup Co. v. Coca Cola Co., 6 Cir., 215 F. 527, 528, Ann.Cas.1915B, 358; "Extract of Coca and Cola", Coca-Cola Co. v. American Druggists' Syndicate, D.C.N.Y., 200 F. 107; "Taka Cola", Coca-Cola Co. v. Old Dominion Beverage Corp., 4 Cir., 271 F. 600; "El-Cola", Coca-Cola Co. v. Du-berstein, D.C.Ohio, 249 F. 763; "A Genuine Coca and Cola Flavor", Coca-Cola Co. v. Stevenson, D.C.Ill., 276 F. 1010, 1014; "Mixo Cola", Coca-Cola Co. v. Hy-Po Co., D.C.N.Y., 1 F.Supp. 644.

None of these reported decisions goes further than the decision of this court in Coca-Cola Co. v. Old Dominion Beverage Corp., 4 Cir., 271 F. 600, involving the use of the name "Taka Cola", and the unreported decision of the present writer in Coca-Cola Co. v. Philips Bros. [7] in the District Court of Maryland, involving the word "Champion-Cola". In both cases the names were regarded as so close to the name "Coca-Cola" as to be likely to result in the confusion of the goods. In both there was unfair competition in the simulation of the color scheme, of the script of the Coca-Cola Company, or in the confusing display of the competing name. In Coca-Cola Co. v. Old Dominion Corp., supra, 271 F. at page 604 the court said: "It is unnecessary to say that we are deciding the case before us. Here we have found, from all the facts, both infringement of a trade-mark and unfair competition. We are not to be understood as intimating any opinion as to whether plaintiff has or has not any exclusive rights in either of the words which make up the trade-mark, when either is used separately from the other, and under circumstances in which there is no attempt by a competitor to use plaintiff's property to plaintiff's damage."

No reported case has come to our attention which distinctly holds that the word "cola" cannot be used as part of a name of a beverage provided that the whole name is not confusingly similar to Coca-Cola. It is urged, however, that we should make such a decision in this case for the reasons, which found favor in the District Court, that no such thing as a cola beverage in the present sense of the term, was known or spoken of prior to the advent of Coca-Cola in 1886, and that the Coca-Cola Company has always asserted its claim to the exclusive use of the term. In our opinion, these considerations, even if sustained by the evidence, are not controlling in the face of the fact that the word "cola" does not today indicate the plaintiff's product but a class of drinks to which the goods of the defendants and many other competitors belong. The applicable rule, supported by authority, is thus stated in the

[7] No opinion for publication.

Restatement of Torts: "§ 735. (1) A designation which is initially a trade-mark or trade name ceases to be such when it comes to be generally understood as a generic or descriptive designation for the type of goods, services or business in connection with which it is used." Comment (a) to the foregoing sub-section (1) reads as follows: "Significance of change in meaning. When one has a monopoly of the initial distribution of a specific article over a period of time, and especially if the descriptive name for the article is one difficult to pronounce or remember, there is a likelihood that the designation which he adopts as his trade-mark for the article will be incorporated into the language as the usual generic designation for an article of that type. When that happens, the designation becomes merely descriptive of the goods and no longer identifies a particular brand or performs any of the functions of a trade-mark or trade name. Moreover, the designation must then be used by others if there is to be any effective competition in the sale of the goods. It is immaterial that the person first adopting the designation made every reasonable effort to avoid this result or that the designation was coined by him and derived meaning only from his use. The designation may be used by others, subject to the limitations of Sub-Section (2) and of Sec. 712 relating to fraudulent marketing." See, also, Comment (b).

The following cases supporting the text deal with the competitive use of the full name applied as a trade-mark to a well known article of commerce; they are all the more persuasive of the decision that should be reached when dealing with only a part of the name of the plaintiff's beverage, that, taken by itself, has never been the name by which that beverage has been known to the public: DuPont Cellophane Co. v. Waxed Products Co., 2 Cir., 85 F.2d 75, certiorari denied Du Pont De Nemours & Co. v. Waxed Products Co., 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443; Id., 304 U.S. 575, 58 S.Ct. 1047, 82 L.Ed. 1539, rehearing denied 305 U.S. 672, 59 S.Ct. 227, 83 L.Ed. 436; Bayer Co. v. United Drug Co., D.C.S.D.N.Y., 272 F. 505; Ford v. Foster, [1872] L.R., 7 Ch. App. 611; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Cf. Saxlehner v. Eisner & Mendel-son Co., 179 U.S. 19, 21 S.Ct. 7, 45 L.Ed. 60; Saxlehner v. Wagner, 216 U.S. 375, 30 S.Ct. 298, 54 L.Ed. 525; Selchow v. Baker, 93 N.Y. 59, 45 Am.Rep. 169; N. K. Fairbank Co. v. Central Lard Co., C.C. N.Y., 64 F. 133.

With this rule in mind, we can realize the full significance of the evidence that the word "cola" was originally adopted in part for its descriptive properties, and has since become a generic term, used in common by manufacturers as part of the trade-names for their products; and the evidence of plaintiff's witnesses that the word indicates to them only a product of the Coca Cola Company is seen to be entitled to little weight. See the discussion of the evidence in DuPont Cellophane Co. v. Waxed Products Co., 2 Cir., 85 F.2d 75, 80. When products of a similar nature are extensively advertised and widely sold, the possibility of some confusion between the goods of competitors and the goods of the principal producer cannot always be avoided; but under the circumstances pertaining to the manufacture and sale of "Cola drinks", the amount of confusion in the absence of fraud will be negligible and may be disregarded. See, John Morrell & Co. v. Doyle, 7 Cir., 97 F.2d 232, 237; Bliss, Fabyan & Co. v. Aileen Mills, 4 Cir., 25 F.2d 370, 372. Our conclusion is that there is no infringement of the plaintiff's trade-mark by the mere use of such names as Dixi Cola or MarBert the Distinctive Cola.

We are, however, in accord with the conclusion of the District Court that the conduct of the defendants has been such as to justify a decree restricting their business activities in the future along certain lines. The evidence amply justifies the finding that distributors of their products in New England, New York and St. Louis, and to a less extent in Baltimore, have attempted to sell and have sold their syrup to customers, engaged in the fountain trade, with the understanding that the drink made therefrom should be sold as and for Coca-Cola. The officers of the defendant corporation had knowledge of these activities and participated therein. The sale of syrup to the fountain trade constituted about ten per cent of the total business of the defendant.

The evidence also justifies the finding that the bottled beverage made by bottlers from defendant's concentrate was passed off as Coca-Cola in various bars and tav-

erns. It is difficult to ascertain how widespread this practice has been, but there is some evidence that an officer of the corporation encouraged the practice. The defendants were also fully aware of the use of the infringing word "Lola-Kola" by bottlers, and indeed agreed to place this word on all packages of its concentrate sold to Lola Bottlers, Inc. Under these circumstances, it is a reasonable conclusion that the defendants have conspired with their customers to palm off their goods for those of the Coca-Cola Company whenever it was safe to do so.

The remedy for these illegal acts, which appears in the decree, is the issuance of an injunction against the defendants enjoining them from committing any acts calculated to cause any product other than the plaintiff's to be known or sold as "Coca-Cola" or "Koke", or any colorable imitation thereof. The defendants are also enjoined "(f) From giving to any part of their merchandise not sold by defendants, their agents or distributors, in bottles to consumers, a color imitating or resembling the color of plaintiff's product, if or when defendants know, or in the exercise of reasonable care should know, that the purchaser thereof intends to dispense such merchandise to the consumer other than in bottles, or intends to bottle the beverage made from such product and to use on the bottles, labels or caps some extrinsic, deceiving element that in conjunction with the color imitating plaintiff's color enables such purchaser to pass off his, her or their product for plaintiff's product."

This portion of the decree is justified by the facts. It is true as stated in Coca-Cola Co. v. Koke Co., 254 U.S. 143, 147, 41 S.Ct. 113, 114, 65 L.Ed. 189, that "the product including the coloring matter is free to all who can make it if no intrinsic deceiving element is present". See, also, Coca-Cola Co. v. Williamsburgh Stopper Co., D.C.S.D.N.Y., [8]; Coca-Cola Co. v. Hy-Po Co., D.C.E.D.N.Y., 1 F.Supp. 644. But it has also been held that the copying of the color of the drink may be enjoined when the act is a part of a scheme of unfair competition. Coca-Cola Co. v. Gay-Ola Co., 6 Cir., 200 F. 720; Coca-Cola Co. v. Hy-Po Co., supra.

The decree of the District Court will therefore be affirmed except insofar as it adjudicates an infringement by the use of the names Dixi Cola, Marbert Cola and Marbert the Distinctive Cola, or prohibits the use of said names or of any name which includes the word "Cola", or from supplying the product on calls for "cola" or from committing any acts calculated to cause its product to be known as "cola".

Modified.

[8] No opinion for publication.